**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SHAWNE MERRIMAN<br>10617 Birch Bluff Avenue<br>San Diego, California 92131 | ) <br> ) <br> ) | |
| | ) | |
| and | ) | |
| | ) | |
| S.M. REAL ESTATE, LLC<br>7821 Vanity Fair Drive<br>Greenbelt, Maryland   20770 | ) <br> ) <br> ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| CADE CONSTRUCTION, LLC | ) | |
| | ) | |
| Serve: Brandon Adams, Registered Agent<br>423 Buchanan Street, N.W.<br>Washington, D.C. 20011 | ) <br> ) <br> ) | |
| | ) | |
| and | ) | |
| | ) | |
| ATLAS CONSTRUCTION GROUP, INC. | ) | |
| | ) | |
| Serve: Leander C. Gray, Registered Agent<br>1219 Girard St., N.W.<br>Washington, D.C. 20009 | ) <br> ) <br> ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES

Plaintiffs, Shawne Merriman and S.M. Real Estate, LLC, by and through their

attorneys, Arthur G. House, Roy I. Niedermayer and Paley, Rothman, Goldstein,

Rosenberg, Eig & Cooper, Chtd., sues CADE Construction, LLC and Atlas Construction

Group, Inc. and states:

PALEY, ROTHMAN
GOLDSTEIN,
ROSENBERG,
EIG & COOPER
CHARTERED
———
Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301)654-7354

JURISDICTION; PARTIES; VENUE.

1.      Plaintiff Shawne Merriman ("Merriman") is a citizen of the State of California.

2.      Plaintiff S.M. Real Estate, LLC ("LLC") is a limited liability company established under the laws of the State of Maryland and with its principal place of business in Maryland.  LLC is a citizen of the State of Maryland.  Merriman is the sole member of LLC.

3.      Defendant CADE Construction, LLC ("CADE") is a limited liability company established under the laws of the District of Columbia and with its principal place of business is the District of Columbia.  CADE is a citizen of the District of Columbia and derives substantial revenues from its business activities in the District of Columbia.

4.      Defendant Atlas Construction Group, Inc. ("Atlas") is a corporation incorporated under the laws of the District of Columbia and with its principal place of business in the District of Columbia.  Atlas is  a citizen of the District of Columbia and derives substantial revenues from its business activities in the District of Columbia.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because this case involves a controversy between citizens of different states and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000).

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(a)(2) and (3) because the events giving rise to this action occurred and the real property involved lies in the District of Columbia.

PALEY, ROTHMAN
GOLDSTEIN,
ROSENBERG,
EIG & COOPER
CHARTERED
_____
Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301)654-7354

CLAIMS.

## COUNT I
### Breach of Contract - CADE

7.      Merriman, through LLC, purchased the real property located at 1221 Harvard Street, N.W., Washington, D.C. 20009 (the "Property") for the purpose of renovating and converting the existing townhouses located on the Property into condominiums to be known as the Harvard Street Duplex Condominiums (the "Project") and thereafter selling them.

8.      Merriman on behalf of himself and LLC entered into a contract with CADE entitled "Development Agreement" dated January 14, 2006.  A copy of the Development Agreement is attached hereto as **Exhibit 1**.

9.      The Development Agreement stated that "CADE shall renovate and develop the Property from 'warm shell' to completion fully consistent with the scope of work described in Exhibit A" (the "Renovations").

10.      In furtherance of its obligations under the Development Agreement, CADE subcontracted with Atlas to undertake the Renovations on the Project pursuant to an American Institute of Architects Standard Form Agreement Between Owner and Contractor for a Small Project dated January 14, 2006 (the "Atlas Agreement").  The Atlas Agreement is attached hereto as **Exhibit 2.**

11.      CADE agreed to complete the Renovations for a agreed fixed contract sum of $442,000.

12.      CADE failed to complete the Project for $442,000 and substantially exceeded the agreed budget.

PALEY, ROTHMAN
GOLDSTEIN,
ROSENBERG,
EIG & COOPER
CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301)654-7354

13.    The Development Agreement provided in Paragraph 1 that "CADE shall cause the Renovations to be completed in their entirety no later than nine (9) months following the Effective Date of this Development Agreement."

14.    The defined Effective Date of the Development Agreement was January 14, 2006.

15.    CADE did not complete the Renovations within nine (9) months of the Effective Date.

16.    On or about July 23, 2007, CADE and Merriman, on behalf of himself and LLC, entered into a First Amendment to the Development Agreement (the "First Amendment").  A copy of the First Amendment is attached hereto as **Exhibit 3**.

17.    Pursuant to Paragraph 3 of the First Amendment, CADE promised that upon receipt of the loan of $117,429 of additional funds from Merriman and Merriman on behalf of the LLC (the "Additional Funds"), CADE and Atlas would "substantially complete the Project under its Small Project Agreement (and First Amendment) with Atlas within 30 to 40 days of the Effective Date hereof, . . . ."

18.    The defined Effective Date for the First Amendment was July 23, 2007.

19.    CADE and Atlas did not substantially complete the Project within 30 to 40 days of the Effective Date.

20.    Merriman and the LLC fulfilled their obligations under the Development Agreement and the First Amendment.

21.    CADE materially breached the terms of the Development Agreement and the First Amendment by failing to complete the Project for the agreed fixed contract sum within the times set forth by the Development Agreement.

PALEY, ROTHMAN
GOLDSTEIN,
ROSENBERG,
EIG & COOPER
CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301)654-7354

22.    CADE's material breaches of the Development Agreement and the First Amendment have proximately caused Merriman and LLC to suffer substantial harm and damages, including but not limited to, additional money loaned to complete the Project, costs to extend expired acquisition and construction loans, additional interest payments on the expired acquisition and construction loans, attorneys' fees and costs.

WHEREFORE, Merriman and LLC demand judgment against CADE in the amount of One Hundred Seventy-Five Thousand and 00/100 Dollars ($175,000), plus interest, costs and expenses incurred in this action, and such other and further relief as this Court deems just and proper.

## COUNT II
### Breach of Contract - Atlas

23.    Merriman and LLC reallege and incorporate by reference paragraphs 7-8 *supra* as if fully set forth herein.

24.    Merriman and LLC were the intended beneficiaries of the Atlas Agreement.

25.    Atlas agreed to complete the Renovations for a agreed fixed contract sum of $442,000.

26.    Atlas failed to complete the Project for $442,000 and substantially exceeded the agreed budget.

27.    Merriman, LLC, Atlas and CADE entered into a First Amendment to the Atlas Agreement (the "Atlas First Amendment").  A copy of the Atlas First Amendment is attached hereto as **Exhibit 4**.

28.    Pursuant to the Atlas First Amendment, Atlas promised Merriman and LLC that upon receipt of the Additional Funds, it would "substantially complete the Project within 30 to 40 days of the Effective Date hereof, . . . ."

PALEY, ROTHMAN
GOLDSTEIN,
ROSENBERG,
EIG & COOPER
CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301)654-7354

29.    The defined Effective Date of the Atlas First Amendment was the "[d]ate draw is actually received."

30.    The Project was not substantially completed within 30 to 40 days of the Effective Date of the Atlas First Amendment.

31.    Merriman and LLC fulfilled their obligations under the Atlas Agreement and the First Amendment.

32.    Atlas materially breached the terms of the Atlas Agreement and the Atlas First Amendment by failing to complete the Project within the time set forth by the Atlas Agreement and Atlas First Amendment.

33.    Atlas' material breach of the Atlas Agreement and the Atlas First Amendment has proximately caused Merriman and LLC to suffer substantial harm and damages, including but not limited to, additional money to complete the Project, costs to extend expired acquisition and construction loans, additional interest payments on the expired acquisition and construction loans, and attorneys' fees and costs.

WHEREFORE, Merriman and LLC demand judgment against Atlas in the amount of One Hundred Seventy-Five Thousand and 00/100 Dollars ($175,000), plus interest, costs and expenses incurred in this action, and such other and further relief as this Court deems just and proper.

**COUNT III**
**Breach of Contract - Atlas**

34.    Merriman and LLC reallege and incorporate by reference paragraphs 7-8, 10, and 25-28 *supra,* as if fully set forth herein.

35.    Relying on the assurances by CADE and Atlas in the First Amendment and the Atlas First Amendment, Merriman for himself and on behalf of LLC loaned $117,429

PALEY, ROTHMAN
GOLDSTEIN,
ROSENBERG,
EIG & COOPER
CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301)654-7354

to Atlas pursuant to an Unsecured Line of Credit Promissory Note (the "Promissory Note") dated July 21, 2007. The Promissory Note is attached hereto as **Exhibit 5**.

36.    Pursuant to the terms of the Promissory Note, Merriman and LLC were to receive three equal principal installments of $39,143, at intervals of six, nine and twelve months from July 21, 2007 and bearing interest at the rate of 8.5% per annum.

37.    Atlas made no payments of principal or interest on the Promissory Note.

38.    Merriman and LLC fulfilled their obligations under the Promissory Note.

WHEREFORE, Merriman and LLC demand judgment in their favor and against Atlas in the amount of One Hundred Seventeen Thousand Four Hundred Twenty-Nine Dollars ($117,429), plus interest, costs and expenses incurred in this action, including reasonable attorneys' fees as provided in the Promissory Note, and such other and further relief as this Court deems just and proper.

## Count IV
### Negligent Hiring/Retention - CADE

39.    Merriman and LLC reallege and incorporate by reference paragraphs 8 and 10, *supra,* as if fully set forth herein.

40.    Pursuant to the Development Agreement, CADE agreed to "manage the development of the Project" and agreed to undertake complete management responsibilities for the Project.

41.    Paragraph 1 of the Development Agreement provided:

Scope of the work. . . . In accordance with the scope of work outlined in Exhibit A, CADE shall be responsible for (a) negotiating, selecting, and engaging all consultants and service persons necessary to implement the Renovations, including without limitation, architects, civil engineers and subcontractors; (b) sales and marketing of the Project; and (c) post-closing warranty administration of the project pursuant to the terms of the condominium documents. The scope of Renovations may only be

PALEY, ROTHMAN
GOLDSTEIN,
ROSENBERG,
EIG & COOPER
CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301)654-7354

modified with the written approval of Merriman, except for modifications required to comply with building codes and other laws and regulations. . . .

42.    The Development Agreement further provided that CADE would engage in the following management responsibilities and duties:

> 3.3    CADE shall be the development manager for the Project and shall have the authority and discretion to make all decisions affecting the business and affairs of the Project.
>
> 3.3.1    CADE shall have the authority and discretion to make all decisions affecting the business and affairs of the Project, to negotiate, execute and deliver all such agreements and documents and take all such other actions necessary, appropriate, or desirable, as determined by CADE in its sole and absolute discretion to accomplish the purpose of the Project. As development manager, CADE shall be responsible for managing the day-to-day affairs of the Project.

43.    At all times relevant to the events alleged in this Complaint, CADE represented to Merriman and LLC that it had substantial experience and expertise in managing condominium renovations in the District of Columbia similar to the Project.

44.    As a result, Merriman and LLC loaned money to Atlas for the Project, including but not limited to, the Additional Funds.

45.    CADE had a duty to use reasonable care to engage, contract with, and hire a contractor as builder that was competent, financially responsible, and qualified to perform the duties and responsibilities set forth in Paragraphs 1, 3.3 and 3.3.1 of the Development Agreement.

46.    Upon information and belief, at all times relevant to the events alleged in this Complaint, Atlas was not sufficiently capitalized to operate its business or complete the Project in a timely manner and within budget.

PALEY, ROTHMAN
GOLDSTEIN,
ROSENBERG,
EIG & COOPER
CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301)654-7354

47. CADE knew, or should have known, prior to entering into the Atlas Development Agreement and the Atlas First Amendment that Atlas underbid the Project and did not have sufficient capital or expertise to complete the Project on time or within the agreed budget.

48. CADE knew, or should have known, prior to entering into the Atlas Development Agreement and the Atlas First Amendment that Atlas did not have sufficient capital or expertise to complete the Project on time or within the agreed budget.

49. Once construction commenced and proceeded, CADE knew, or should have known, that Atlas would not be able to complete the Project on time or within the agreed budget because of Atlas' actual performance including its consistent inability to make timely progress on the Project and continued failure to meet budgetary limits.

50. CADE was negligent in that it failed to select a competent, qualified and financially responsible contractor for the Project; it failed to monitor, supervise and control Atlas to assure that the Project would be completed in a timely manner and within budget; it failed to discharge Atlas or recommend its discharge to Merriman when it became apparent that Atlas was incompetent; and it failed to replace Atlas with a competent builder in sufficient time to avoid damage to the Project and Merriman.

51. As a result of CADE's negligence in hiring, managing, and retaining Atlas, Merriman and LLC suffered substantial harm and damages, including but not limiting to, additional money expended to complete the Project, costs to extend expired acquisition and construction loans, additional interest payments on the expired acquisition and construction loans, and associated costs and attorneys' fees.

PALEY, ROTHMAN
GOLDSTEIN,
ROSENBERG,
EIG & COOPER
CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301)654-7354

WHEREFORE, Merriman and LLC demand judgment in their favor and against CADE in the amount of One Hundred Seventy-Five Thousand and 00/100 Dollars ($175,000), plus interest, costs and expenses incurred in this action, and such other and further relief as this Court deems just and proper.

**COUNT V**
**Breach of Fiduciary Duty - CADE**

52.    Merriman and LLC reallege and incorporate by reference paragraphs 7-9 and 51, *supra* as if fully set forth herein.

53.    CADE had superior knowledge, skill and experience in performing condominium conversions, managing construction, and meeting budget limitations set for construction.

54.    Merriman and LLC lacked any experience in performing condominium conversions, managing construction and meeting construction budget limitations.

55.    CADE, Merriman and LLC had a relationship of trust and confidence.

56.    Merriman and LLC entrusted CADE to administer and account for the application of the $117,429 loaned pursuant to the Promissory Note to Atlas for the express purpose of the Project, as well as to ensure such money was used only for construction of the Project.

57.    CADE had a duty to supervise Atlas and ensure that money provided or loaned by Merriman and LLC, including the Additional Funds, were used only for purposes of construction of the Project.

58.    Upon information and belief, the money provided or loaned by Merriman and LLC, including the Additional Funds, were misappropriated by Atlas or diverted for purposes other than the Project.

PALEY, ROTHMAN
GOLDSTEIN,
ROSENBERG,
EIG & COOPER
CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301)654-7354

59.    CADE breached its fiduciary duty to Merriman and LLC by failing to supervise the use of the Additional Funds and ensure that any money loaned by Merriman and LLC was used for the Project.

60.    CADE's breach of its fiduciary duties owed to Merriman and LLC proximately caused damages to Merriman and LLC.

WHEREFORE, Merriman and LLC demand judgment in their favor and against CADE in the amount of One Hundred Seventy-Five Thousand and 00/100 Dollars ($175,000), plus interest, costs and expenses incurred in this action, and such other and further relief as this Court deems just and proper.

PALEY, ROTHMAN, GOLDSTEIN,
ROSENBERG, EIG & COOPER, CHTD.

By: _____
    Arthur G. House, Esq. #161844
    Roy I. Niedermayer, Esq. #180380

4800 Hampden Lane, Seventh Floor
Bethesda, MD 20814
Telephone: (301) 951-9334
Facsimile: (301) 654-7354

Attorneys for Shawne Merriman and
S. M. Real Estate, LLC

PALEY, ROTHMAN
GOLDSTEIN,
ROSENBERG,
EIG & COOPER
CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301)654-7354



CADE Construction, LLC
701 Lamont Street NW
Suite 24
Washington, DC 20010
301-399-1385 fax 775-205-1096

## DEVELOPMENT AGREEMENT

**THIS DEVELOPMENT AGREEMENT** (this *"Development Agreement"*) is entered into as of January __14th__, 2006 (the *"Effective Date"*) by and between **CADE Construction LLC** (*"CADE"*), a District of Columbia limited liability company, and **Shawne Merriman** and/or his successors and/or assigns(*"Merriman"*), an individual.

## RECITALS

A.  Merriman is the owner of that certain property located in the District of Columbia and commonly known as 1221 Harvard Street, N.W., Washington, D.C. (the *"Property"*).

B.  Merriman desires to renovate and convert the Property into two condominium units with off-street on grade parking to be sold upon completion (the *"Project"*).

C.  CADE has experience in the development and renovations of real property.

D.  Merriman desires to hire CADE to manage the development of the Project, and CADE desires to implement the Project on behalf of Merriman in exchange for certain fees described herein.

**NOW, THEREFORE**, in consideration of the premises and the mutual promises made herein, the parties agree as follows:

1.    Scope of Work.  CADE shall renovate and develop the Property from "warm shell" to completion fully consistent with the scope of work described in Exhibit A (the *"Renovations"*). In accordance with the scope of work outlined in Exhibit A, CADE shall be responsible for (a) negotiating, selecting, and engaging all consultants and service persons necessary to implement the Renovations, including without limitation, architects, civil engineers and subcontractors; (b) sales and marketing of the Project; and (c) post-closing warranty administration of the project pursuant to the terms of the condominium documents.  The scope of Renovations may only be modified with the written approval of Merriman, except for modifications required to comply

EXHIBIT

1

with building codes and other laws and regulations. CADE shall cause the Renovations to be completed in their entirety no later than the date that is nine (9) months following the Effective Date of this Development Agreement (the "Completion Date").

2.    Compensation. In consideration for implementing the Renovations, Merriman shall pay to CADE (a) a $5,000 retainer fee on the date of this Development Agreement (the "Retainer"), and (b) an aggregate amount equal to $30,000 (the "Development Fee") in equal installments of $3,889 for 9 months and payable monthly on each date that funds are disbursed for the construction of the Project, *provided, however,* that the Development Fee shall not exceed $35,000 and *provided, further,* that in the event the Renovations are not completed by the Completion Date, CADE shall see the renovations to completion but shall not be entitled to any further payments for its services under this Development Agreement.

3.    Ownership and Management of the Property During Renovations.

3.1.    Merriman shall retain ownership of the Property except as otherwise provided for herein. Merriman shall execute a power-of-attorney in favor of CADE authorizing CADE to negotiate, execute and deliver all such agreements and documents and take all such other actions necessary, appropriate or desirable to accomplish the Renovations.

3.2.    Merriman hereby grants to CADE an irrevocable license to enter and access the Property to perform the Renovations and to otherwise implement the Project. The license shall expire, unless otherwise extended by mutual agreement of Merriman and CADE, upon the earlier of (a) the termination of this Development Agreement pursuant to the terms hereof, ( CADE can terminate this agreement for nonpayment by Merriman if payment has not been made within 60 days of payment due date. In the event that Merriman decides to terminate the agreement without mutual consent, before the completion of said project, CADE will be paid in full according to the agreed upon terms of this agreement and all contractor fees to date of the termination shall be paid) or (b) eighteen (18) months after the Effective Date of this Development Agreement.

3.3.    CADE shall be the development manager for the Project and shall have the authority and discretion to make all decisions affecting the business and affairs of the Project.

3.3.1.  CADE shall have the authority and discretion to make all decisions affecting the business and affairs of the Project, to negotiate, execute and deliver all such agreements and documents and take all such other actions necessary, appropriate, or desirable, as determined by CADE in its sole and absolute discretion to accomplish the purpose of the Project. As development manager, CADE shall be responsible for managing the day-to-day affairs of the Project.

3.3.2.  Notwithstanding the foregoing, CADE shall not take any of the following actions without the prior written consent of Merriman:

3.3.2.1. Substantial changes to the scope of work .

3.3.2.2.Termination of general contractor or architect.

4.      Condominium Creation and Documentation.  CADE shall assist Merriman in taking the necessary steps required by law and otherwise to prepare, register and record a condominium regime at the Property.  Merriman shall be the declarant of the condominium.

5.      Project Costs and Financing.

5.1.    An approved budget for the Project is attached hereto as Exhibit B (the "*Project Budget*").  The Project Budget may not be changed without the written approval of both parties; provided, however, that CADE may adjust amounts for individual line items within the following categories of the Project Budget so long as the sum of such items does not exceed [___]% of the total Project Budget: Permits/Testing/Inspections; Utility Costs/Bonds; Professional Fees; Insurance and Taxes; Legal, Finance and Other; Marketing; and Miscellaneous & Contingency.

5.2.    Merriman shall be responsible for obtaining all financing necessary to complete construction of the Renovations and otherwise implement the Project.  Merriman shall remain responsible for all interest carry or other debt service associated with any loan secured by the Property until such loan is paid in full.  CADE shall deliver to Merriman a copy of any notice it receives with respect to any non-payment or default under any loan for the Project within three (3) business days of receipt of such notice.

3

5.3.    Merriman shall pay and be solely responsible for all costs associated with implementing the Project, whether or not such costs are shown on the Project Budget, including but not limited to the costs of the Renovations, architectural and engineering costs, marketing, sales commissions, surveying, transfer taxes, title work, legal work, marketing costs, and financing costs incurred in implementing the Project.

5.4.    CADE's books and records pertaining to its financial performance under this Development Agreement shall be kept in accordance with generally accepted accounting principles uniformly applied.  CADE shall provide Merriman access to such books and records, upon reasonable notice and during normal business hours.

6.    <u>Marketing</u>.

6.1.    CADE shall be responsible for marketing both condominium units of the Project. CADE shall furnish or cause to be furnished the following services with respect to the condominium units:

6.1.1.    Engage real estate brokers or marketing staff or both, such parties may be affiliates of CADE; and work with such agents to adequately price the units according to current market conditions.

6.1.2.    Prepare brochures, advertisements and marketing materials;

6.1.3.    Place advertisements;

6.1.4.    Show model condominium units to prospective purchasers, if applicable;

6.1.5.    Negotiate purchase agreements for condominium units and provide the same to Merriman for its signature; and

6.1.6.    Schedule condominium unit closings and arrange for all services required to close on the sale of units, including, without limitation, the services of closing attorneys, title insurers and settlement agents.

6.2.    CADE shall cause each condominium units to be sold at fair market value as determined by an independent appraisal.

7.    Unit Closings. Condominium unit closings shall be arranged and supervised by CADE, and shall take place at the times and places provided for in the purchase agreements. CADE shall deliver to Merriman all necessary closing documents for its review, approval or execution, as may be applicable, in connection with each condominium unit closing. Merriman shall attend each closing or deliver to closing all documents requiring its signature.

8.    Warranty Administration. CADE shall be responsible for the administration of all warranties provided to purchasers of the Project condominiums for the terms of such warranties.

9.    Compliance with Laws and Quality of Work. CADE shall perform the Renovations in a good and workmanlike manner and in strict accordance with the requirements of all applicable laws, ordinances, codes, orders, rules and regulations of all applicable governmental authorities. All the activities performed under this Development Agreement shall be performed in accordance with (a) standard practices in real estate development for comparable for-sale developments in Washington, D.C.; and (b) standards, criteria and other requirements imposed by applicable statutes, regulations, ordinances, and orders of all governmental authorities having jurisdiction over the Project. CADE shall use good faith diligent efforts to furnish the skill and judgment necessary to perform its obligations hereunder in an expeditious and economical manner. CADE shall use good faith diligent efforts to apply for, prosecute and obtain all necessary approvals, permits and licenses required for the performance of the Renovations, conversion of the Property and sale of the units. Merriman agrees to cooperate with and publicly support CADE's efforts to obtain such permits and licenses.

10.    Insurance.

10.1.   "Builder's Risk" Coverage. Merriman shall be responsible for obtaining and maintaining in force "builder's risk" coverage insurance on the Property then completed or under construction in the customary form in the District of Columbia for buildings and improvements of similar character. The amount of such insurance will be set forth on an "agreed amount

endorsement" to the policy of such insurance and will not be less than 100% of the full replacement cost of the improvements to the Property, as determined from time to time.

10.2.   General Liability.   Merrriman shall be responsible for obtaining and maintaining in force general liability insurance with limits of not less than one million dollars ($1,000,000) per occurrence and two million dollars ($2,000,000) aggregate, for bodily injury, personal injury, and property damage liability, insuring against any and all liability of CADE, including, without limitation, coverage for contractual liability and broad form property damage, with respect to the Property or arising out of the maintenance, use, or occupancy of the Property.

10.3.   Other.   Merrriman shall be responsible for obtaining and maintaining in force any other insurance required by the construction lender.

11.   No Liens.   Neither party, without the prior written approval of the other, shall encumber the Property, except as set forth herein for Merriman's financing of the Renovations and related costs.

12.   Environmental Covenants.

12.1.   For purposes of this Section 20, the following definitions shall apply:

12.1.1.   "*Environmental Laws*" means any federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to, or imposing liability or standards of conduct concerning hazardous, toxic or dangerous waste, substance or material, as now or at any time hereafter in effect, including, but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601 et seq. and the regulations promulgated thereunder (as amended from time to time), the Clean Air Act, 42 U.S.C. 7401, et seq. and the regulations promulgated thereunder (as amended from time to time), in the Clean Water Act, 33 U.S.C. 1251 et seq. and regulations promulgated thereunder (as amended from time to time), the Resource, Conservation and Recovery Act, 42 U.S.C. 6901 et seq. and regulations promulgated thereunder (as amended from time to time), and the Oil Pollution Act of 1990, 33 U.S.C. 2701 et seq. and regulations promulgated thereunder (as amended from time to time).

12.1.2. "*Prohibited Substances*" means any (i) asbestos or asbestos-containing material or polychlorinated biphenyl material, (ii) lead, lead-based paint or other lead containing material, (iii) hazardous substances or hazardous waste as defined under any federal, state or local law, that may require remediation under applicable law (other than quantities or such substances, including gasoline, diesel fuel and the like as are customary and necessary to prosecute construction and occupancy of the improvements on the Property), or (iv) soil containing volatile organic compounds.

12.2.    Without limitation of any of CADE's other covenants, agreements and obligations under this Agreement, CADE hereby specifically covenants and agrees to fulfill the responsibilities set forth below with respect to environmental matters:

12.2.1. CADE shall comply with all Environmental Laws.  All required governmental permits and licenses issued to CADE and associated with the Property and the Renovations shall remain in effect or shall be renewed in a timely manner, and CADE shall comply therewith.  CADE shall not itself, and CADE shall use reasonable best efforts not to permit any other person, including, but not limited to, third parties with whom CADE contracts in regard to this Agreement, to bring onto the Property any Prohibited Substances.

12.2.2. CADE shall promptly provide Merriman with copies of all forms, notices and other information it receives concerning any releases, spills or other incidents relating to Prohibited Substances or any violations of Environmental Laws at or relating to the Property when and as supplied by any government agency.

13.    Representations and Warranties.

13.1.    CADE hereby represents and warrants to Merriman as of the date hereof:

13.1.1. CADE is a duly organized, lawfully existing limited liability company and is in good standing under the laws of the District of Columbia.

13.1.2. CADE has the full right, power and authority to make, execute, deliver and perform its obligations under this Development Agreement and any related agreements.

13.1.3. CADE's execution and delivery of this Development Agreement and any related agreements, has been authorized by all requisite company action on the part of CADE and its constituent members, and the execution and delivery of this Development Agreement and any related agreements, by CADE and the performance of its obligations hereunder will not violate or contravene any agreement or obligation to which CADE is a party or by which it is bound.

13.1.4. There is no action, suit, litigation or proceeding pending or, to CADE's knowledge, threatened against CADE which could prevent or impair CADE's entry into this Development Agreement and/or performance of its obligations hereunder.

13.1.5. The person signing this Development Agreement on behalf of CADE is duly and validly authorized to do so.

13.2.    Merriman hereby represents and warrants to CADE as of the date hereof:

13.2.1. Merriman has the full right, power and authority to make, execute, deliver and perform its obligations under this Development Agreement and any related agreements.

13.2.2. Merriman is the lawful owner of the Property.

13.2.3. The execution and delivery of this Development Agreement and any related agreements, by Merriman and the performance of its obligations hereunder will not violate or contravene any agreement or obligation to which Merriman is a party or by which it is bound.

13.2.4. There is no action, suit, litigation or proceeding pending or, to Merriman's knowledge, threatened against Merriman which could prevent or impair Merriman's entry into this Development Agreement and/or performance of its obligations hereunder.

14.    Indemnification. Merriman hereby agrees to indemnify, defend, and hold CADE, its officers, directors, agents, members, employees, successors and assigns (the "**CADE Indemnified Parties**") harmless from and against all penalties, losses, claims, damages, punitive damages, expenses, suits, judgments, fines, costs, liabilities (including sums paid in settlement of claims), interest, reasonable attorneys' fees (including any attorneys' fees incurred in enforcing

8

this indemnity), consultants' fees and expert fees whatsoever that may arise against the CADE Indemnified Parties as a result of the performance by CADE of its obligations under this Development Agreement except in the case of CADE's gross negligence or willful misconduct. The provisions of this indemnity shall survive the termination, revocation or expiration of this Development Agreement.

15.    Defaults and Remedies

15.1.    **Events of CADE Default.**  At the option of Merriman, the occurrence of any of the following events shall constitute an "*Event of Default*" by CADE:

15.1.1. If CADE breaches any of the other agreements, terms, covenants, or conditions that this Development Agreement requires CADE to perform, and such breach continues for a period of thirty (30) days after notice by Merriman to CADE; provided, however, if the nature of the breach is such that it cannot be cured by the breaching party reasonably within the period of thirty (30) days, CADE shall not be deemed in default of this Development Agreement if CADE commences the curing of such breach within such period of thirty (30) days of such notice and prosecutes in good faith the curing of same.

15.1.2. Any representation or warranty made by CADE in this Agreement is false, incorrect or misleading in any material respect, which is not corrected by CADE within ten (10) days of receiving written notice from Merriman;

15.1.3. CADE or any member of CADE (individually, the "*Defaulting Party*" and collectively the "*Defaulting Parties*") becomes insolvent, is adjudged bankrupt, makes a general assignment for the benefit of creditors, or becomes a subject of any proceeding commenced under any statute or law for the relief of debtors; provided that (1) the Defaulting Party shall have ninety (90) days to effect the dismissal or stay of any such involuntary proceeding; or (2) the remaining members or guarantors of the Defaulting Party shall, within the same ninety (90) day period, either remove the Defaulting Party and (i) replace it with another entity reasonably acceptable to Merriman, or (ii) provide Merriman with reasonable assurances of performance for the Defaulting Party's obligations.

15.1.4. **Merriman Remedies.** If any one or more Events of Default on the part of CADE occurs, then Merriman may terminate this Development Agreement in whole or in part by written notice to CADE of its intention to terminate this Development Agreement on a date specified in such notice that is no earlier than 5 days following the date of such notice, and/or exercise any rights or remedies it may have under applicable law or otherwise. Merriman shall remain responsible for the repayment of any debt secured by the Property to the extent the proceeds of such debt were expended in accordance with the Project Budget or this Agreement.

15.2.  **Events of Merriman Default.** At the option of CADE, the occurrence of any of the following events shall constitute an "*Event of Default*" by Merriman.

15.2.1. The Property or any part of the Property are subjected to any attachment by any creditor of Merriman or claimant against Merriman, and such attachment is not discharged or bonded (by payment or by other means permitted by law) within sixty (60) days after its levy;

15.2.2. Any representation or warranty made by Merriman herein is false, incorrect or misleading in any material respect, which is not corrected by Merriman within ten (10) days of receiving written notice from CADE; or

15.2.3. Merriman breaches any of the other agreements, terms, covenants, or conditions which this Development Agreement requires Merriman to perform, and such breach continues for a period of thirty (30) days after notice by CADE to the breaching party; provided, however, if the nature of the breach is such that it cannot be cured by the breaching party reasonably within the period of thirty (30) days, Merriman shall not be deemed in default of this Development Agreement if Merriman commences the curing of such breach within such period of thirty (30) days of such notice and prosecutes in good faith the curing of same.

15.3.  **CADE Remedies.** If any one or more Events of Default on the part of Merriman occurs, then CADE may terminate this Agreement in whole or in part by written notice to Merriman of its intention to terminate this Agreement on a date specified in such notice that is no earlier than 5 days following the date of such notice, and/or exercise any rights or remedies it may have under applicable law or otherwise. Merriman shall remain responsible for the

repayment of any debt secured by the Property to the extent the proceeds of such debt were expended in accordance with the Project Budget or this Agreement.

16.    Miscellaneous Provisions

16.1.    Except as may otherwise be specified in this Agreement, where the consent or approval of either party is required in accordance with this Development Agreement, or required for an amendment or supplement to this Development Agreement, such consent or approval shall not be unreasonably withheld, conditioned or delayed.

16.2.    This Development Agreement shall be binding upon and inure to the benefit of the legal representatives, successors, and assigns of the parties hereto.

16.3.    This Development Agreement may not be assigned or amended without the written approval of both parties.

16.4.    This Development Agreement will be governed by the laws of the District of Columbia.

16.5.    No waiver of any condition or agreement in this Development Agreement by any party will imply or constitute a further waiver by such party of the same or any other condition or agreement.

16.6.    Except as expressly limited by the terms of this Development Agreement, all rights, powers and privileges conferred hereunder shall be cumulative and not restrictive of those provided at law or in equity.

16.7.    This Development Agreement may be signed in counterparts and all such counterparts shall be deemed to be originals and together shall constitute one and the same instrument.

25.8    Notwithstanding anything contained herein to the contrary, no third party shall have any rights or benefits under this Agreement.

**[Signatures appear on next page]**

11

IN WITNESS WHEREOF, and intending to be legally bound, the parties have executed this Development Agreement as of the date first above written.

SHAWNE MERRIMAN

By: _____

CADE CONSTRUCTION LLC

By: _____
Name:
Title:

EXHIBIT A
## SCOPE OF WORK

Portion of Work
1. **Design:** Project will be surveyed, designed, drawings produced, and permits procured as follows
   a. Design Phase I: Program Outline, Existing Conditions Survey, & Schematic Design
   b. Design Phase II: Design Development
   c. Design Phase III: Construction Documents
   d. Design Phase IV: Construction Administration
2. **Framing:** New interior framing will be installed per provided architectural layout. New stair opening will be established and stairs installed.
3. **Roofing:** New roof will be installed.
4. **Mechanical:** New and separate heating, ventilating, and air-conditioning systems will be installed including furnace, air conditioning compressors, and ductwork.
5. **Plumbing:** Work includes the installation of all new plumbing with separately metered systems; waste lines, potable water lines, hot water heaters, and fixtures.
6. **Electric:** New and separate 200 amp electric services with all new wiring, outlets, switches, recessed lighting, and lighting fixtures per architectural drawings.
7. **Insulation:** Exterior walls and roof will be insulated to meet or exceed current building code.
8. **Sound Dampening:** Sound dampening materials will be installed between the two condominium units.
9. **Windows:** Existing windows will be replaced with all wood double pane insulated glass double hung windows.
10. **Doors:** Exterior doors will be Therma-tru fiberglass stainable doors.
11. **Wall Finishes:** All walls shall be finished gypsum board with three coats of paint (1 color only).
12. **Tile:** Foyer, kitchen floors, and bathroom floors and showers will be tiled with ceramic tile per the architects finish schedule.
13. **Hardwood Floor:** Oak hardwood flooring will be installed on all floors that are not tiled other than the basement unit floor which will be fully carpeted.
14. **Cabinetry:** New cabinets and granite countertops will be installed in the kitchen. Vanities and cultured marble tops will be installed in the bathrooms.
15. **Appliances:** New stainless steel appliances will be installed (gas stove, refrigerator, dishwasher, garbage disposal, and microwave).

EXHIBIT B
PROJECT BUDGET

Updated  1/09/06
Proposed Condo Pricing

| Target $/Sq Ft | $ | 400 |
|---|---|---|

| Unit Type | | Unit Number | BRs | Baths | Unit Square Footage | Total Square Footage | | Proposed Price / Unit | Price Premium vs. Target | | Price/ Sq. Foot | Reserved |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit 1 | 1 | 101 | 2 | 2.5 | 1,865 | 1,865 | $ | 662,075 | 89% | $ | 355 | |
| Unit 2 | 1 | 102 | 2 | 2.5 | 1,865 | 1,865 | $ | 680,725 | 91% | $ | 365 | |
| | | | | | | | | | | | | |
| Sub-Total / Average | 2 | | 4 | 5 | 3,730 | 3,730 | $ | 1,342,800 | 90% | $ | 360 | |

| Parking | 2 | | | | | | $ | 60,000 | | | | |

| | - | | | | | | $ | 1,402,800 | | | | |

8 Months

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 609 | Financing Fees | 0.00 | 0 | 0 | 0 | 0 | 0.00 |
| 610 | Appraisal | 0.00 | 0 | | | | |
| 611 | Update Title Request | 0.00 | 0 | 0 | 0 | 0 | 0.00 |
| | Warranty Bond | 0.66 | 2,460 | | | | |
| | | | | | | | |
| 7700 | MISCELLANEOUS & CONTINGENCY | 1.88 | 7,000 | 0 | 7,000 | 7,000 | 1.88 |
| 701 | Printing & Reproduction (Design Phase) | 0.54 | 2,000 | 0 | 2,000 | 2,000 | 0.54 |
| 702 | Miscellaneous | 0.80 | 3,000 | 0 | 3,000 | 3,000 | 0.80 |
| 703 | Contingency | 0.54 | 2,000 | 0 | 2,000 | 2,000 | 0.54 |
| | | | | | | | |
| Subtotal | | | 1,200,334 | | | | |
| Interest Reserve | | 15.40 | 57,431 | | | | |
| | | | | | | | |
| SECTION I: TOTAL | | 337.20 | 1,257,765 | 345,091 | 840,243 | 1,185,334 | 317.78 |
| SECTION I: APPROVED BUDGET | | | 1,257,765 | | | 1,257,765 | |
| SECTION I: VARIANCE | | | 0 | | | 72,431 | |
| | | | | | | | |

# �people AIA® Document A105™ – 1993

## Standard Form of Agreement Between Owner and Contractor for a Small Project where the Basis of Payment is a STIPULATED SUM

This AGREEMENT is made: January 14, 2006
*(Date)*

BETWEEN the Owner:

CADE Construction LLC, a Limited Liability Company
7443 Crestberry Lane
Bethesda, MD 20817

and the Design-Build Entity

Atlas Construction Group, Inc., a Close Corporation
4700 14th Street, N.W.
Washington, D.C. 20011

for the following Project:

Harvard Street Duplex Condos
1221 Harvard Street, NW
Washington, DC  20009

The Architect is:

Modus Architecture, Inc., Close Corporation
4700 14th Street, NW, Washington, DC 20011

The Owner and Design-Build Entity agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A105™ – 1993. Copyright © 1993 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:36:54 on 09/19/2006 under Order No.1000186746_1 which expires on 7/1/2006, and is not for resale.
User Notes:                                                                                        (1071559803)

1



**EXHIBIT**

2

## ARTICLE 1 THE CONTRACT DOCUMENTS
The Design-Build Entity shall complete the Work described in the Contract Documents for the project. The Contract Documents consist of:

.1  this Agreement signed by the Owner and Design-Build Entity;

.2  AIA Document A205, General Conditions of the Contract for Construction of a Small Project, current edition;

.3  the Drawings and Specifications prepared by the Architect, dated        , and enumerated as follows:

Drawings: TO COME

| Number | Title | Date |
| --- | --- | --- |

Specifications:

| Section | Title | Pages |
| --- | --- | --- |

.4  addenda prepared by the Architect as follows:

| Number | Date | Pages |
| --- | --- | --- |

.5  written change orders or orders for minor changes in the Work issued after execution of this Agreement; and

.6  other documents, if any, identified as follows:

## ARTICLE 2 DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION DATE
The date of commencement shall be the date of this Agreement unless otherwise indicated below. The Design-Build Entity shall substantially complete the Work not later than Three hundred (300) days , subject to adjustment by Change Order.
*(Insert the date or number of calendar days after the date of commencement.)*

March , 2006

## ARTICLE 3 CONTRACT SUM
§ 3.1 Subject to additions and deductions by Change Order, the Contract Sum is:

Four Hundred Forty-Two Thousand Dollars and Zero Cents ($ 442,000.00 )

§ 3.2 For purposes of payment, the Contract Sum includes the following values related to portions of the Work:

| Portion of Work | Value ($ 0.00) |
| --- | --- |
| 1.  **Design:** Project will be surveyed, designed, drawings produced, and permits procured as follows | |
|    a.  Design Phase I: Program Outline, Existing Conditions Survey, & Schematic Design | $8,100.00 |
|    b.  Design Phase II: Design Development | $6,900.00 |
|    c.  Design Phase III: Construction Documents | $10,800.00 |
|    d.  Design Phase IV: Construction Administration | $1,350.00 |
| 2.  **Framing:** New interior framing will be installed per provided architectural layout. New stair opening will be established and stairs installed. | Aggregate value of construction services is $415,000.00. A Schedule of Values will be set forth in an AIA G703. |
| 3.  **Roofing:** New roof will be installed. | |
| 4.  **Mechanical:**  New and separate heating, | |

AIA Document A105™ --1993. Copyright © 1993 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:38:54 on 03/19/2006 under Order No.1000186746_1 which expires on 7/1/2006, and is not for resale.
User Notes:                                                                                      (1071559803)

2.

ventilating, and air-conditioning systems will be installed including furnace, air conditioning compressors, and ductwork.

5. **Plumbing:** Work includes the installation of all new plumbing with separately metered systems; waste lines, potable water lines, hot water heaters, and fixtures.

6. **Electric:** New and separate 200 amp electric services with all new wiring, outlets, switches, recessed lighting, and lighting fixtures per architectural drawings. .

7. **Insulation:** Exterior walls and roof will be insulated to meet or exceed current building code.

8. **Sound Dampening:** Sound dampening materials will be installed between the two condominium units.

9. **Windows:** Existing windows will be replaced with all wood double pane insulated glass double hung windows.

10. **Doors:** Exterior doors will be Therma-tru fiberglass stainable doors.

11. **Wall Finishes:** All walls shall be finished gypsum board with three coats of paint (1 color only).

12. **Tile:** Foyer, kitchen floors, and bathroom floors and showers will be tiled with ceramic tile per the architects finish schedule.

13. **Hardwood Floor:** Oak hardwood flooring will be installed on all floors that are not tiled other than the basement unit floor which will be fully carpeted.

14. **Cabinetry:** New cabinets and granite countertops will be installed in the kitchen. Vanities and cultured marble tops will be installed in the bathrooms.

15. **Appliances:** New stainless steel appliances will be installed (gas stove, refrigerator, dishwasher, garbage disposal, and microwave).

16. **Exterior:** The exterior brickwork will be painted, a parking pad will be installed and limited landscaping will be provided as determined by the Design-Build Entity.

§ 3.3 The Contract Sum shall include all items and services necessary for the proper execution and completion of the Work.

## ARTICLE 4  PAYMENT

§ 4.1 Based on Design-Build Entity's Applications for Payment, the Owner shall pay the Design-Build Entity as follows:

*(Here insert payment procedures and provisions for retainage, if any.)*

Upon execution of this Contract or upon the receipt of bank financing, Owner shall pay Design-Build Entity $15,000.00 for Design Phases I and II. Thereafter, the Owner shall pay the Design-Build Entity the amount corresponding each subsequent design phase prior to the commencement of such design phase. Upon the receipt of

AIA Document A105™ –1993. Copyright © 1993 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:38:54 on 03/19/2006 under Order No.1000186746_1 which expires on 7/1/2006, and is not for resale.
User Notes:                                                                                    (1071569803)

the building permit, the Owner shall pay the Design-Build Entity FORTY ONE THOUSAND FIVE HUNDRED DOLLARS ($41,500) representing a ten percent (10%) deposit towards the construction fees. Beginning thirty (30) days thereafter, the Design-Build Entity shall invoice the Owner every thirty (30) to forty-five (45) days based on percentage of completion.

§ 4.2 Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate of two ( 2% ) per annum , or in the absence thereof, at the legal rate prevailing at the place of the Project. *(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Design-Build Entity's principal places of business, the location of the Project and elsewhere may affect the validity of this provision.)*

## ARTICLE 5  INSURANCE
§ 5.1 The Design-Build Entity and the Architect shall provide insurance as follows:
*(Insert specific insurance required by the Owner.)*

| Type of insurance | Limit of liability ($ 0.00) |
|---|---|
| General Liability Insurance for the Design-Build Entity | $2,000,000.00 |
| Professional Liability Insurance for the Architect | $2,000,000.00 |

§ 5.2 The Owner shall provide Owner's Liability and Owner's Property Insurance as follows:
*(Insert specific insurance furnished by the Owner.)*

| Type of insurance | Limit of liability ($ 0.00) |
|---|---|
| Builder's Risk Insurance or Personal Umbrella Insurance | $1,000,000.00 |

§ 5.3 The Design-Build Entity shall obtain an endorsement to its general liability insurance policy to cover the Design-Build Entity's obligations under Section 3.12 of AIA Document A205, General Conditions of the Contract for Construction of Small Projects.

§ 5.4 Certificates of insurance shall be provided by each party showing their respective coverages prior to commencement of the Work.

## ARTICLE 6  OTHER TERMS AND CONDITIONS
*(Insert any other terms or conditions below.)*

QUALIFICATIONS:  Assumptions or qualifications, if any, on which the Contract Sum is based, are as follows:

1. Basement floor elevation will not need to be lowered.
2. Existing floor framing will be re-usable for the renovation.
3. Upgrading of services at street excluded.
4. All fees not directly or indirectly associated with work are excluded.
5. Construction permit fees are excluded.
6. Testing and abatement of lead, asbestos, and mold are excluded.

ADDITIONAL SERVICES
Additional architectural and engineering services, when requested or required will be billed at time of delivery of such service.
FEE SCHEDULE

| Principal: | $135.00 per hour |
| Project Manager: | $95.00 per hour |
| Draftsperson: | $55.00 per hour |

*[Signature Page Follows]*

AIA Document A105™–1993. Copyright © 1993 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:18:54 on 03/19/2006 under Order No.1000196746_1 which expires on 7/1/2006, and is not for resale.
User Notes:                                          (1071559803)

4

This Agreement entered into as of the day and year first written above.
(If required by law, insert cancellation period, disclosures or other warning statements above the signatures.)

CADG LLC
_____
OWNER (Signature)

Buwa Binitie
_____
(Printed name and title)

_____
DESIGN-BUILD ENTITY (Signature)

Christopher S. Brauss, Project Executive
_____
(Printed name and title)
LICENSE NO.: Pending
JURISDICTION: Washington, DC

AIA Document A105™ – 1993. Copyright © 1993 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:38:54 on 03/19/2008 under Order No.1000186746_1 which expires on 7/1/2008, and is not for resale.
User Notes:                                                                                                                                    (1071559803)

5

*Additions and Deletions Report for*
*AIA® Document A105™ – 1993*

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note: This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 13:38:54 on 03/19/2008.

PAGE 1

This AGREEMENT is made: <u>January 14, 2006</u>

<u>CADE Construction LLC, a Limited Liability Company</u>

<u>7443 Crestberry Lane</u>

<u>Bethesda, MD 20817</u>

and the ~~Contractor~~<u>Design-Build Entity</u>

<u>Atlas Construction Group, Inc., a Close Corporation</u>

<u>4700 14th Street, N.W.</u>

<u>Washington, D.C.  20011</u>

<u>Harvard Street Duplex Condos</u>

<u>1221 Harvard Street, NW</u>

<u>Washington, DC  20009</u>

<u>Modus Architecture, Inc., Close Corporation</u>

<u>4700 14th Street, NW, Washington, DC 20011</u>

The Owner and ~~Contractor~~<u>Design-Build Entity</u> agree as follows.

PAGE 2

The ~~Contractor~~<u>Design-Build Entity</u> shall complete the Work described in the Contract Documents for the project. The Contract Documents consist of:

    .1    this Agreement signed by the Owner and ~~Contractor~~<u>Design-Build Entity;</u>

    Drawings: <u>TO COME</u>

The date of commencement shall be the date of this Agreement unless otherwise indicated below. The ~~Contractor~~ <u>Design-Build Entity</u> shall substantially complete the Work not later than <u>Three hundred (300) days</u> , subject to adjustment by Change Order.

<u>March , 2006</u>

Additions and Deletions Report for AIA Document A105™ – 1993. Copyright © 1993 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:38:54 on 03/19/2008 under Order No.1000186746_1 which expires on 7/1/2008, and is not for resale.
User Notes:    (1071569803)

1

(S—Four Hundred Forty-Two Thousand Dollars and Zero Cents ($ 442,000.00 )

1.  Design:  Project will be surveyed, designed,
    drawings produced, and permits procured as
    follows

    a.  Design Phase I:  Program Outline,                $8,100.00
        Existing Conditions Survey, & Schematic
        Design

    b.  Design Phase II:  Design Development             $6,900.00

    c.  Design Phase III:  Construction                  $10,800.00
        Documents

    d.  Design     Phase     IV:     Construction        $1,350.00
        Administration

2.  Framing:  New interior framing will be          Aggregate value of construction services is
    installed per provided architectural layout.   $415,000.00.  A Schedule of Values will be set
    New stair opening will be established and       forth in an AIA G703.
    stairs installed.
3.  Roofing:  New roof will be installed.
4.  Mechanical:    New and separate heating,
    ventilating, and air-conditioning systems will
    be installed including furnace, air conditioning
    compressors, and ductwork.
5.  Plumbing: Work includes the installation of
    all new plumbing with separately metered
    systems; waste lines, potable water lines, hot
    water heaters, and fixtures.
6.  Electric: New and separate 200 amp electric
    services with all new wiring, outlets, switches,
    recessed lighting, and lighting fixtures per
    architectural drawings.
7.  Insulation:  Exterior walls and roof will be
    insulated to meet or exceed current building
    code.
8.  Sound Dampening:       Sound dampening
    materials will be installed between the two
    condominium units.
9.  Windows:  Existing windows will be replaced
    with all wood double pane insulated glass
    double hung windows.
10. Doors:  Exterior doors will be Therma-tru
    fiberglass stainable doors.
11. Wall Finishes:  All walls shall be finished
    gypsum board with three coats of paint (1
    color only).
12. Tile:  Foyer, kitchen floors, and bathroom
    floors and showers will be tiled with ceramic
    tile per the architects finish schedule.
13. Hardwood Floor:  Oak hardwood flooring
    will be installed on all floors that are not tiled
    other than the basement unit floor which will
    be fully carpeted.

Additions and Deletions Report for AIA Document A105™ – 1993. Copyright © 1993 by The American Institute of Architects.  All rights reserved.
WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this
AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under
the law. This document was produced by AIA software at 13:38:54 on 03/19/2008 under Order No.1000188748_1 which expires on 7/1/2008, and is not for
resale.
User Notes:                                                                                          (1071559903)

14. Cabinetry: New cabinets and granite countertops will be installed in the kitchen. Vanities and cultured marble tops will be installed in the bathrooms.
15. Appliances: New stainless steel appliances will be installed (gas stove, refrigerator, dishwasher, garbage disposal, and microwave).
16. Exterior: The exterior brickwork will be painted, a parking pad will be installed and limited landscaping will be provided as determined by the Design-Build Entity.

## PAGE 3

§ 4.1 Based on ~~Contractor's~~ Design-Build Entity's Applications for ~~Payment certified by the Architect,~~ Payment, the Owner shall pay the ~~Contractor~~ Design-Build Entity as follows:

Upon execution of this Contract or upon the receipt of bank financing, Owner shall pay Design-Build Entity $15,000.00 for Design Phases I and II. Thereafter, the Owner shall pay the Design-Build Entity the amount corresponding each subsequent design phase prior to the commencement of such design phase. Upon the receipt of the building permit, the Owner shall pay the Design-Build Entity FORTY ONE THOUSAND FIVE HUNDRED DOLLARS ($41,500) representing a ten percent (10%) deposit towards the construction fees. Beginning thirty (30) days thereafter, the Design-Build Entity shall invoice the Owner every thirty (30) to forty-five (45) days based on percentage of completion.

## PAGE 4

§ 4.2 Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate of _two_ ( _2%_ ) _per annum_, or in the absence thereof, at the legal rate prevailing at the place of the Project.

_(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and ~~Contractor's~~ Design-Build Entity's principal places of business, the location of the Project and elsewhere may affect the validity of this provision.)_

§ 5.1 The ~~Contractor~~ Design-Build Entity and the Architect shall provide ~~Contractor's Liability and other Insurance~~ insurance as follows:

| | |
|---|---|
| General Liability Insurance for the Design-Build Entity | $2,000,000.00 |
| Professional Liability Insurance for the Architect | $2,000,000.00 |
| Builder's Risk Insurance or Personal Umbrella Insurance | $1,000,000.00 |

§ 5.3 The ~~Contractor~~ Design-Build Entity shall obtain an endorsement to its general liability insurance policy to cover the ~~Contractor's~~ Design-Build Entity's obligations under Section 3.12 of AIA Document A205, General Conditions of the Contract for Construction of Small Projects.

QUALIFICATIONS: Assumptions or qualifications, if any, on which the Contract Sum is based, are as follows:

1. Basement floor elevation will not need to be lowered.
2. Existing floor framing will be re-usable for the renovation.
3. Upgrading of services at street excluded.

Additions and Deletions Report for AIA Document A105™ – 1993. Copyright © 1993 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:33:54 on 03/19/2008 under Order No.1000186746_1 which expires on 7/1/2008, and is not for resale.
User Notes: (1071559803)

3

4.  All fees not directly or indirectly associated with work are excluded.

5.  Construction permit fees are excluded.

6.  Testing and abatement of lead, asbestos, and mold are excluded.

## ADDITIONAL SERVICES

Additional architectural and engineering services, when requested or required will be billed at time of delivery of such service.

## FEE SCHEDULE

| | |
|---|---|
| Principal: | $135.00 per hour |
| Project Manager: | $95.00 per hour |
| Draftsperson: | $55.00 per hour |

*[Signature Page Follows]*

Additions and Deletions Report for AIA Document A105™ – 1993. Copyright © 1993 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:38:54 on 03/19/2006 under Order No.1000185745_1 which expires on 7/1/2006, and is not for resale.
User Notes:                                                                  (1071559803)

4

PAGE 5

OWNER (Signature)

OWNER (Signature)

Buwa Binitie

DESIGN-BUILD ENTITY (Signature)

CONTRACTOR (Signature)

Christopher S. Brauss, Project Executive

LICENSE NO.:
LICENSE NO.: Pending

JURISDICTION:
JURISDICTION: Washington, DC

Additions and Deletions Report for AIA Document A105™ – 1993. Copyright © 1993 by The American Institute of Architects.  All rights reserved.
WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this
AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under
the law.  This document was produced by AIA software at 13:38:54 on 03/19/2006 under Order No.1000186746_1 which expires on 7/1/2006, and is not for
resale.
User Notes:                                                                                                              (1071559803)

# AIA® Document A205™ – 1993

## General Conditions of the Contract for Construction of a Small Project

for the following PROJECT:
*(Name and location or address):*
Harvard Street Duplex Condos
1221 Harvard Street, NW
Washington, DC 20009

THE OWNER:
*(Name and address):*
CADE Construction, LLC, a Limited Liability Company
7443 Crestberry Lane
Bethesda, MD 20817

THE DESIGN-BUILD ENTITY:
*(Name and address):*
Atlas Construction Group, Inc., Close Corporation
4700 14th Street, N.W.
Washington, D.C. 20011

THE ARCHITECT:
*(Name and address):*
Modus Architecture, Inc., Close Corporation
4700 14th Street, NW, Washington, DC 20011

ADDITIONS AND DELETIONS:
The author of this document has
added information needed for its
completion. The author may also
have revised the text of the
original AIA standard form. An
*Additions and Deletions Report*
that notes added information as
well as revisions to the standard
form text is available from the
author and should be reviewed.
A vertical line in the left margin of
this document indicates where
the author has added necessary
information and where the author
has added to or deleted from the
original AIA text.

This document has important
legal consequences.
Consultation with an attorney
is encouraged with respect to
its completion or modification.

## ARTICLE 1  GENERAL PROVISIONS

### § 1.1 THE CONTRACT
The Contract represents the entire and integrated agreement between the parties and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a written modification.

### § 1.2 THE WORK
The term "Work" means the construction and services required by the Contract Documents, and includes all other labor, materials, equipment and services provided by the Design-Build Entity to fulfill the Design-Build Entity's obligations.

### § 1.3 INTENT
The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Design-Build Entity. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all.

### § 1.4 OWNERSHIP AND USE OF ARCHITECT'S DRAWINGS, SPECIFICATIONS AND OTHER DOCUMENTS
Documents prepared by the Architect are instruments of the Architect's service for use solely with respect to this project. The Architect shall retain all common law, statutory and other reserved rights, including the copyright. They are not to be used by the Design-Build Entity or any Subcontractor, Sub-subcontractor or material or equipment supplier for

AIA Document A205™ – 1993. Copyright © 1993 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is
protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it,
may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced
by AIA software at 07:17:42 on 03/20/2006 under Order No.1000186746_1 which expires on 7/1/2006, and is not for resale.
User Notes:                                                                                                                    (2999520600)**

1

### § 3.5 WARRANTY

The Design-Build Entity warrants to the Owner and Architect that: (1) materials and equipment furnished under the Contract will be new and of good quality unless otherwise required or permitted by the Contract Documents; (2) the Work will be free from defects not inherent in the quality required or permitted; and (3) the Work will conform to the requirements of the Contract Documents.

### § 3.6 TAXES

The Design-Build Entity shall pay sales, consumer, use and similar taxes that are legally required when the Contract is executed.

### § 3.7 PERMITS, FEES AND NOTICES

§ 3.7.1 The Owner shall obtain and pay for the building permit and governmental fees and licenses and the Design-Build Entity shall obtain and pay for all trade permits and inspections necessary for proper execution and completion of the Work.

§ 3.7.2 The Design-Build Entity shall comply with and give notices required by agencies having jurisdiction over the Work. If the Design-Build Entity performs Work knowing it to be contrary to laws, statutes, ordinances, building codes, and rules and regulations without notice to the Architect and Owner, the Design-Build Entity shall assume full responsibility for such Work and shall bear the attributable costs. The Design-Build Entity shall promptly notify the Architect in writing of any known inconsistencies in the Contract Documents with such governmental laws, rules and regulations.

### § 3.8 SUBMITTALS

The Design-Build Entity shall promptly review, approve in writing and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents. Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents.

### § 3.9 USE OF SITE

The Design-Build Entity shall confine operations at the site to areas permitted by law, ordinances, permits, the Contract Documents and the Owner.

### § 3.10 CUTTING AND PATCHING

The Design-Build Entity shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

### § 3.11 CLEANING UP

The Design-Build Entity shall keep the premises and surrounding area free from accumulation of debris and trash related to the Work.

### § 3.12 INDEMNIFICATION

To the fullest extent permitted by law, the Design-Build Entity shall indemnify and hold harmless the Owner, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to reasonable attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Design-Build Entity, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

## ARTICLE 4   ARCHITECT'S ADMINISTRATION OF THE CONTRACT

§ 4.1 The Architect will provide administration of the Contract as described in the Contract Documents. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents.

§ 4.2 The Architect will visit the site at intervals appropriate to the stage of construction to become generally familiar with the progress and quality of the Work.

AIA Document A205™ – 1993. Copyright © 1993 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:17:42 on 03/20/2006 under Order No.1000186746_1 which expires on 7/1/2006, and is not for resale.
User Notes:                                                                                                              (2999520600)

§ 4.3 The Architect will not have control over or charge of and will not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Design-Build Entity's responsibility. The Architect will not be responsible for the Design-Build Entity's failure to carry out the Work in accordance with the Contract Documents.

*(Paragraph deleted)*

§ 4.5 The Architect will have authority to reject Work that does not conform to the Contract Documents.

§ 4.6 The Architect will promptly review and approve or take appropriate action upon Design-Build Entity's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. Any such action taken by the Architect will constitute "Additional Services" under the Contract Documents.

§ 4.7 The Architect will promptly interpret and decide matters concerning performance under and requirements of the Contract Documents on written request of either the Owner or Design-Build Entity. Such work by the Architect will constitute "Additional Services" under the Contract Documents.

§ 4.8 Interpretations and decisions of the Architect will be consistent with the intent of and reasonably inferable from the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and decisions, the Architect will endeavor to secure faithful performance by both Owner and Design-Build Entity, will not show partiality to either and will not be liable for results of interpretations or decisions so rendered in good faith. § 4.9 The Architect's duties, responsibilities and limits of authority as described in the Contract Documents will not be changed without written consent of the Owner, Design-Build Entity and Architect. Consent shall not be unreasonably withheld.

## ARTICLE 5  CHANGES IN THE WORK

§ 5.1 After execution of the Contract, changes in the Work may be accomplished by Change Order or by order for a minor change in the Work. The Owner, without invalidating the Contract, may order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

§ 5.2 A Change Order shall be a written order to the Design-Build Entity signed by the Owner and Architect to change the Work, Contract Sum or Contract Time.

§ 5.3 The Architect will have authority to order minor changes in the Work not involving changes in the Contract Sum or the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be written orders and shall be binding on the Owner and Design-Build Entity. The Design-Build Entity shall carry out such written orders promptly.

§ 5.4 If concealed or unknown physical conditions are encountered at the site that differ materially from those indicated in the Contract Documents or from those conditions ordinarily found to exist, the Contract Sum and Contract Time shall be subject to equitable adjustment.

## ARTICLE 6  TIME

§ 6.1 Time limits stated in the Contract Documents are of the essence of the Contract.

§ 6.2 If the Design-Build Entity is delayed at any time in progress of the Work by changes ordered in the Work, or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Design-Build Entity's control, the Contract Time shall be extended by Change Order for such reasonable time as the Design-Build Entity and Owner may mutually determine.

## ARTICLE 7  PAYMENTS AND COMPLETION

§ 7.1 CONTRACT SUM

The Contract Sum stated in the Agreement, including authorized adjustments, is the total amount payable by the Owner to the Design-Build Entity for performance of the Work under the Contract Documents.

§ 7.2 APPLICATIONS FOR PAYMENT

§ 7.2.1 [RESERVED]

AIA Document A205™ – 1993. Copyright © 1993 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:17:42 on 03/20/2006 under Order No.1000196746_1 which expires on 7/1/2006, and is not for resale. (2999520600)
User Notes:

**§ 7.2.2** The Design-Build Entity warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Design-Build Entity further warrants that upon submittal of an Application for Payment, all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Design-Build Entity's knowledge, information and belief, be free and clear of liens, claims, security interests or other encumbrances adverse to the Owner's interests.

**§ 7.3 [RESERVED]**

*(Paragraph deleted)*

**§ 7.4 PROGRESS PAYMENTS**
**§ 7.4.1** After the Design-Build Entity has issued a Certificate for Payment, the Owner shall make payment in the manner provided in the Contract Documents.

**§ 7.4.2** The Design-Build Entity shall promptly pay each Subcontractor and material supplier, upon receipt of payment from the Owner, out of the amount paid to the Design-Build Entity on account of such entities' portion of the Work.

**§ 7.4.3** Neither the Owner nor the Architect shall have responsibility for the payment of money to a Subcontractor or material supplier.

**§ 7.4.4** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the project by the Owner shall not constitute acceptance of Work not in accordance with the requirements of the Contract Documents.

**§ 7.5 SUBSTANTIAL COMPLETION**
**§ 7.5.1** Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so the Owner can occupy or utilize the Work for its intended use.

**§ 7.5.2** When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion, shall establish the responsibilities of the Owner and Design-Build Entity, and shall fix the time within which the Design-Build Entity shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

**§ 7.6 FINAL COMPLETION AND FINAL PAYMENT**
**§ 7.6.1** RESERVED.

**§ 7.6.2** Final payment shall not become due until the Design-Build Entity submits to the Owner releases and waivers of liens, and data establishing payment or satisfaction of obligations, such as receipts, claims, security interests or encumbrances arising out of the Contract.

**§ 7.6.3** Acceptance of final payment by the Design-Build Entity, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

**ARTICLE 8  PROTECTION OF PERSONS AND PROPERTY**
**§ 8.1 SAFETY PRECAUTIONS AND PROGRAMS**
The Design-Build Entity shall be responsible for initiating, maintaining and supervising all safety precautions and programs, including all those required by law in connection with performance of the Contract. The Design-Build Entity shall promptly remedy damage and loss to property caused in whole or in part by the Design-Build Entity, or by anyone for whose acts the Design-Build Entity may be liable.

AIA Document A205™—1993. Copyright © 1993 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:17:42 on 03/20/2008 under Order No.1000186746_1 which expires on 7/1/2008, and is not for resale.
User Notes:                                                                                                (2999520600)

## ARTICLE 9   CORRECTION OF WORK

§ 9.1 The Design-Build Entity shall promptly correct Work rejected by the Architect as failing to conform to the requirements of the Contract Documents.  The Design-Build Entity shall bear the cost of correcting such rejected Work.

§ 9.2 In addition to the Design-Build Entity's other obligations including warranties under the Contract, the Design-Build Entity shall, for a period of one year after Substantial Completion, correct work not conforming to the requirements of the Contract Documents.

§ 9.3 If the Design-Build Entity fails to correct nonconforming Work within a reasonable time, the Owner may correct it and the Design-Build Entity shall reimburse the Owner for the cost of correction.

## ARTICLE 10   MISCELLANEOUS PROVISIONS

### § 10.1 ASSIGNMENT OF CONTRACT

Neither party to the Contract shall assign the Contract as a whole without written consent of the other.

### § 10.2 TESTS AND INSPECTIONS

§ 10.2.1 Tests, inspections and approvals of portions of the Work required by the Contract Documents or by laws, ordinances, rules, regulations or orders of public authorities having jurisdiction shall be made at an appropriate time.

§ 10.2.2 If the Architect requires additional testing, the Design-Build Entity shall perform these tests.

§ 10.2.3 The Owner shall pay for tests except for testing Work found to be defective for which the Design-Build Entity shall pay.

### § 10.3 GOVERNING LAW

The Contract shall be governed by the law of the place where the project is located.

## ARTICLE 11   TERMINATION OF THE CONTRACT

### § 11.1 TERMINATION BY THE DESIGN-BUILD ENTITY

If the Owner fails to make payment when due or substantially breaches any other obligation of this Contract, following seven days' written notice to the Owner, the Design-Build Entity may terminate the Contract and recover from the Owner payment for Work executed and for proven loss with respect to materials, equipment, tools, construction equipment and machinery, including reasonable overhead, profit and damages.

### § 11.2 TERMINATION BY THE OWNER

§ 11.2.1 The Owner may terminate the Contract if the Design-Build Entity:

    .1    persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

    .2    fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Design-Build Entity and the Subcontractors;

    .3    persistently disregards laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction; or

    .4    is otherwise guilty of substantial breach of a provision of the Contract Documents.

§ 11.2.2 When any of the above reasons exist, the Owner, after consultation with the Architect, may without prejudice to any other rights or remedies of the Owner and after giving the Design-Build Entity and the Design-Build Entity's surety, if any, seven days' written notice, terminate employment of the Design-Build Entity and may:

    .1    take possession of the site and of all materials thereon owned by the Design-Build Entity;

    .2    finish the Work by whatever reasonable method the Owner may deem expedient.

§ 11.2.3 When the Owner terminates the Contract for one of the reasons stated in Section 11.2.1, the Design-Build Entity shall not be entitled to receive further payment until the Work is finished.

§ 11.2.4 If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, such excess shall be paid to the Design-Build Entity.  If such costs exceed the unpaid balance, the Design-Build Entity shall pay the difference to the Owner. This obligation for payment shall survive termination of the Contract.

AIA Document A295™ – 1993. Copyright © 1993 by The American Institute of Architects.  All rights reserved.  WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.  This document was produced by AIA software at 07:17:42 on 03/20/2006 under Order No.1000186748_1 which expires on 7/1/2006, and is not for resale.
User Notes:                                                                                                                          (2999520600)

*Additions and Deletions Report for*
*AIA® Document A205™ – 1993*

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note: This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 07:17:42 on 03/20/2006.

PAGE 1

Harvard Street Duplex Condos

1221 Harvard Street, NW

Washington, DC 20009

*(Name and address):*

CADE Construction, LLC, a Limited Liability Company

7443 Crestberry Lane

Bethesda, MD 20817

THE DESIGN-BUILD ENTITY:

Atlas Construction Group, Inc., Close Corporation

4700 14th Street, N.W.

Washington, D.C. 20011

Modus Architecture, Inc., Close Corporation

4700 14th Street, NW, Washington, DC 20011

The term "Work" means the construction and services required by the Contract Documents, and includes all other labor, materials, equipment and services provided by the ~~Contractor~~ Design-Build Entity to fulfill the ~~Contractor's~~ Design-Build Entity's obligations.

The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the ~~Contractor.~~ Design-Build Entity. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all.

Documents prepared by the Architect are instruments of the Architect's service for use solely with respect to this project. The Architect shall retain all common law, statutory and other reserved rights, including the copyright. They are not to be used by the ~~Contractor~~ Design-Build Entity or any Subcontractor, Sub-subcontractor or material or equipment supplier for other projects or for additions to this project outside the scope of the Work without the specific written consent of the Owner and Architect.

PAGE 2

Additions and Deletions Report for AIA Document A205™ – 1993. Copyright © 1993 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:17:42 on 03/20/2006 under Order No.1000186746_1 which expires on 7/1/2006, and is not for resale.
User Notes:                                                                                                          (2999620600)

§ 2.1.1 If requested by the ~~Contractor~~ Design-Build Entity, the Owner shall furnish and pay for a survey and a legal description of the site.

...

§ 2.1.2 Except for permits and fees which are the responsibility of the ~~Contractor~~ Design-Build Entity under the Contract Documents, the Owner shall obtain and pay for other necessary approvals, easements, assessments and charges.

...

If the ~~Contractor~~ Design-Build Entity fails to correct Work which is not in accordance with the Contract Documents, the Owner may direct the ~~Contractor~~ Design-Build Entity in writing to stop the Work until the correction is made.

...

If the ~~Contractor~~ Design-Build Entity defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven day period after receipt of written notice from the Owner to correct such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies, correct such deficiencies. In such case, a Change Order shall be issued deducting the cost of correction from payments due the ~~Contractor~~ Design-Build Entity.

...

§ 2.4.2 The ~~Contractor~~ Design-Build Entity shall coordinate and cooperate with separate contractors employed by the Owner.

...

~~ARTICLE 3   CONTRACTOR~~
ARTICLE 3   DESIGN-BUILD ENTITY

Execution of the Contract by the ~~Contractor~~ Design-Build Entity is a representation that the ~~Contractor~~ Design-Build Entity has visited the site, become familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.

§ 3.2
~~REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR~~ REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY DESIGN-BUILD ENTITY

The ~~Contractor~~ Design-Build Entity shall carefully study and compare the Contract Documents with each other and with information furnished by the Owner. Before commencing activities, the ~~Contractor~~ Design-Build Entity shall: (1) take field measurements and verify field conditions; (2) carefully compare this and other information known to the ~~Contractor~~ Design-Build Entity with the Contract Documents; and (3) promptly report errors, inconsistencies or omissions discovered to the Architect.

§ 3.3.1 The ~~Contractor~~ Design-Build Entity shall supervise and direct the Work, using the ~~Contractor's~~ Design-Build Entity's best skill and attention. The ~~Contractor~~ Design-Build Entity shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures, and for coordinating all portions of the Work.

§ 3.3.2 The ~~Contractor,~~ Design-Build Entity, as soon as practicable after award of the Contract, shall furnish in writing to the Owner ~~through the Architect~~ the names of subcontractors or suppliers for each portion of the Work. ~~The Architect will promptly reply to the Contractor in writing if the Owner or the Architect, after due investigation, has reasonable objection to the subcontractors or suppliers listed.~~

...

§ 3.4.1 Unless otherwise provided in the Contract Documents, the ~~Contractor~~ Design-Build Entity shall provide and pay for labor, materials, equipment, tools, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work.

...

§ 3.4.2 The ~~Contractor~~ Design-Build Entity shall deliver, handle, store and install materials in accordance with manufacturers' instructions.

PAGE 3

The ~~Contractor~~ Design-Build Entity warrants to the Owner and Architect that: (1) materials and equipment furnished under the Contract will be new and of good quality unless otherwise required or permitted by the Contract

Additions and Deletions Report for AIA Document A205™ – 1993. Copyright © 1993 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:17:42 on 03/20/2008 under Order No.1000186746_1 which expires on 7/1/2008, and is not for resale.
User Notes:                                                                                                          (2999520600)

Documents; (2) the Work will be free from defects not inherent in the quality required or permitted; and (3) the Work will conform to the requirements of the Contract Documents.

...

The ~~Contractor~~ Design-Build Entity shall pay sales, consumer, use and similar taxes that are legally required when the Contract is executed.

§ 3.7.1 The ~~Contractor~~ Owner shall obtain and pay for the building permit and ~~other permits~~ governmental fees and ~~governmental fees,~~ licenses and the Design-Build Entity shall obtain and pay for all trade permits and inspections necessary for proper execution and completion of the Work.

§ 3.7.2 The ~~Contractor~~ Design-Build Entity shall comply with and give notices required by agencies having jurisdiction over the Work. If the ~~Contractor~~ Design-Build Entity performs Work knowing it to be contrary to laws, statutes, ordinances, building codes, and rules and regulations without notice to the Architect and Owner, the ~~Contractor~~ Design-Build Entity shall assume full responsibility for such Work and shall bear the attributable costs. The ~~Contractor~~ Design-Build Entity shall promptly notify the Architect in writing of any known inconsistencies in the Contract Documents with such governmental laws, rules and regulations.

...

The ~~Contractor~~ Design-Build Entity shall promptly review, approve in writing and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents. Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents.

...

The ~~Contractor~~ Design-Build Entity shall confine operations at the site to areas permitted by law, ordinances, permits, the Contract Documents and the Owner.

...

The ~~Contractor~~ Design-Build Entity shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

...

The ~~Contractor~~ Design-Build Entity shall keep the premises and surrounding area free from accumulation of debris and trash related to the Work.

...

To the fullest extent permitted by law, the ~~Contractor~~ Design-Build Entity shall indemnify and hold harmless the Owner, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to reasonable attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the ~~Contractor,~~ Design-Build Entity, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

PAGE 4

§ 4.3 The Architect will not have control over or charge of and will not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the ~~Contractor's~~ Design-Build Entity's responsibility. The Architect will not be responsible for the ~~Contractor's~~ Design-Build Entity's failure to carry out the Work in accordance with the Contract Documents.

~~§ 4.4 Based on the Architect's observations and evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor.~~

...

§ 4.6 The Architect will promptly review and approve or take appropriate action upon ~~Contractor's~~ Design-Build Entity's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. Any such action taken by the Architect will constitute "Additional Services" under the Contract Documents.

...

Additions and Deletions Report for AIA Document A205™ – 1993. Copyright © 1993 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:17:42 on 03/20/2006 under Order No.1000186746_1 which expires on 7/1/2006, and is not for resale.
User Notes:                                                                                                  (2999520600)

3

§ 4.7 The Architect will promptly interpret and decide matters concerning performance under and requirements of the Contract Documents on written request of either the Owner or ~~Contractor~~-Design-Build Entity. Such work by the Architect will constitute "Additional Services" under the Contract Documents.

§ 4.8 Interpretations and decisions of the Architect will be consistent with the intent of and reasonably inferable from the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and decisions, the Architect will endeavor to secure faithful performance by both Owner and ~~Contractor~~ Design-Build Entity, will not show partiality to either and will not be liable for results of interpretations or decisions so rendered in good ~~faith~~.

~~§ 4.9 The Architect's duties, responsibilities and limits of authority as described in the Contract Documents will not be changed without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld faith.~~ § 4.9 The Architect's duties, responsibilities and limits of authority as described in the Contract Documents will not be changed without written consent of the Owner, Design-Build Entity and Architect. Consent shall not be unreasonably withheld.

...

§ 5.2 A Change Order shall be a written order to the ~~Contractor~~ Design-Build Entity signed by the Owner and Architect to change the Work, Contract Sum or Contract Time.

...

§ 5.3 The Architect will have authority to order minor changes in the Work not involving changes in the Contract Sum or the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be written orders and shall be binding on the Owner and ~~Contractor~~ Design-Build Entity. The ~~Contractor~~ Design-Build Entity shall carry out such written orders promptly.

§ 6.2 If the ~~Contractor~~ Design-Build Entity is delayed at any time in progress of the Work by changes ordered in the Work, or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the ~~Contractor's~~ Design-Build Entity's control, the Contract Time shall be extended by Change Order for such reasonable time as the ~~Architect~~ Design-Build Entity and Owner may ~~mutually~~ determine.

The Contract Sum stated in the Agreement, including authorized adjustments, is the total amount payable by the Owner to the ~~Contractor~~ Design-Build Entity for performance of the Work under the Contract Documents.

...

~~§ 7.2.1 At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment for operations completed in accordance with the values stated in the Agreement. Such application shall be supported by such data substantiating the Contractor's right to payment as the Owner or Architect may reasonably require and reflecting retainage if provided for elsewhere in the Contract Documents.~~ [RESERVED]

PAGE 5

§ 7.2.2 The ~~Contractor~~ Design-Build Entity warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The ~~Contractor~~ Design-Build Entity further warrants that upon submittal of an Application for Payment, all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the ~~Contractor's~~ Design-Build Entity's knowledge, information and belief, be free and clear of liens, claims, security interests or other encumbrances adverse to the Owner's interests.

§ 7.3 ~~CERTIFICATES FOR PAYMENT~~ [RESERVED]

...

~~The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part.~~

§ 7.4.1 After the ~~Architect~~ Design-Build Entity has issued a Certificate for Payment, the Owner shall make payment in the manner provided in the Contract Documents.

...

Additions and Deletions Report for AIA Document A205™ – 1993. Copyright © 1993 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:17:42 on 03/20/2006 under Order No.1000186746_1 which expires on 7/1/2006, and is not for resale.
User Notes:

4

(2999520600)

§ 7.4.2 The ~~Contractor~~ Design-Build Entity shall promptly pay each Subcontractor and material supplier, upon receipt of payment from the Owner, out of the amount paid to the ~~Contractor~~ Design-Build Entity on account of such entities' portion of the Work.

...

§ 7.5.2 When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion, shall establish the responsibilities of the Owner and ~~Contractor,~~ Design-Build Entity, and shall fix the time within which the ~~Contractor~~ Design-Build Entity shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

...

§ 7.6.1 ~~Upon receipt of a final Application for Payment, the Architect will inspect the Work. When the Architect finds the Work acceptable and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment.~~ RESERVED.

...

§ 7.6.2 Final payment shall not become due until the ~~Contractor~~ Design-Build Entity submits to the ~~Architect~~ Owner releases and waivers of liens, and data establishing payment or satisfaction of obligations, such as receipts, claims, security interests or encumbrances arising out of the Contract.

...

§ 7.6.3 Acceptance of final payment by the ~~Contractor,~~ Design-Build Entity, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

...

The ~~Contractor~~ Design-Build Entity shall be responsible for initiating, maintaining and supervising all safety precautions and programs, including all those required by law in connection with performance of the Contract. The ~~Contractor~~ Design-Build Entity shall promptly remedy damage and loss to property caused in whole or in part by the ~~Contractor,~~ Design-Build Entity, or by anyone for whose acts the ~~Contractor~~ Design-Build Entity may be liable.

PAGE 6

§ 9.1 The ~~Contractor~~ Design-Build Entity shall promptly correct Work rejected by the Architect as failing to conform to the requirements of the Contract Documents. The ~~Contractor~~ Design-Build Entity shall bear the cost of correcting such rejected Work.

...

§ 9.2 In addition to the ~~Contractor's~~ Design-Build Entity's other obligations including warranties under the Contract, the ~~Contractor~~ Design-Build Entity shall, for a period of one year after Substantial Completion, correct work not conforming to the requirements of the Contract Documents.

...

§ 9.3 If the ~~Contractor~~ Design-Build Entity fails to correct nonconforming Work within a reasonable time, the Owner may correct it and the ~~Contractor~~ Design-Build Entity shall reimburse the Owner for the cost of correction.

...

§ 10.2.2 If the Architect requires additional testing, the ~~Contractor~~ Design-Build Entity shall perform these tests.

...

§ 10.2.3 The Owner shall pay for tests except for testing Work found to be defective for which the ~~Contractor~~ Design-Build Entity shall pay.

...

§ 11.1 ~~TERMINATION BY THE CONTRACTOR~~ TERMINATION BY THE DESIGN-BUILD ENTITY

If the Owner fails to make payment when due or substantially breaches any other obligation of this Contract, following seven days' written notice to the Owner, the ~~Contractor~~ Design-Build Entity may terminate the Contract and recover from the Owner payment for Work executed and for proven loss with respect to materials, equipment, tools, construction equipment and machinery, including reasonable overhead, profit and damages.

...

§ 11.2.1 The Owner may terminate the Contract if the ~~Contractor~~ Design-Build Entity:

.2    fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the ~~Contractor~~ Design-Build Entity and the Subcontractors;

Additions and Deletions Report for AIA Document A205™ – 1993. Copyright © 1993 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:17:42 on 03/20/2006 under Order No.1000185748_1 which expires on 7/1/2006, and is not for resale.

User Notes:                                                                                              (2999520600)

5

# Certification of Document's Authenticity
*AIA® Document D401™ – 2003*

I, Christopher S. Brauss, hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 07:17:42 on 03/20/2006 under Order No. 1000186746_1 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A205™ – 1993 - General Conditions of the Contract for Construction of a Small Project, as published by the AIA in its software, other than those additions and deletions shown in the associated Additions and Deletions Report.

_____
(Signed)

_____
PRINCIPAL
(Title)

_____
6/20/06
(Dated)

AIA Document D401™ – 2003. Copyright © 1992 and 2003 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:17:42 on 03/20/2006 under Order No.1000186746_1 which expires on 7/1/2006, and is not for resale.
User Notes:                                                                                                    (2999620600)

1

First Amendment to Development Agreement Dated 1/14/06 (Development Agreement) between Cade Construction LLC (Cade) and Shawne Merriman and/or his Entity S.M. Real Estate, LLC (jointly, SM)

WHEREAS, Cade and Atlas Construction Group Inc. (Atlas) entered into "Agreement between Owner and Contractor for a Small Project" AIA Document A105 as modified by "General Conditions" AIA Document A205 dated 1/14/06 (jointly, Small Project Agreement) for condominium conversion and remodel of Harvard St. Duplex Condos, 1221 Harvard St. Northwest, Washington, DC 20009 (Property or Project) Owned by SM for the fixed contract price of $442,000;

WHEREAS, SM has obligated himself to pay the amounts agreed by him and due and owing to Atlas pursuant to the Small Project Agreement under his Development Agreement with Cade, whereby Cade agreed to manage the development of the Project;

WHEREAS, Cade and Atlas during construction have agreed upon 2 change orders totaling $25,450 ($17,500 for water service upgrade and $7,950 for removal/replacement of second-floor masonry wall), bringing the total contract price up to $467,450;

WHEREAS, Atlas has been paid $422,000 out of the adjusted contract price of $467,450, and is owed another $45,450 upon completion of the Project;

WHEREAS, Cade represents and agrees that Atlas' substantial completion of the Project will require another $116,429 in addition to the $45,450 owing under the adjusted contract price, making a total of $161,879 in order for Atlas to complete the Project (Atlas Completion Costs);

WHEREAS, Cade confirms that as of the Effective Date below and at the time of full and final completion, there are and will be no unpaid suppliers, subcontractors, employees or other persons with actual or potential mechanics lien rights against the Property and/or SM;

WHEREAS, Cade represents and agrees that the only additional costs to SM over and above the Atlas Completion Costs in order to complete the Project are the balance of its contractual compensation totaling $5,000 ($30,000 less previous payment of $7,500 less negotiated reduction totaling $17,500), $7,600 for budgeted marketing costs, and approximately $6,000 to pay the premium on the builder's risk insurance policy extension until completion;

WHEREAS, Atlas and Cade agree that SM should not be obligated to pay the additional $116,429 portion of the Atlas Completion Costs in view of the fixed contract price agreed upon by Cade and Atlas, and that Atlas should assume and pay that full obligation without SM or other reimbursement; and

WHEREAS, Atlas does not have sufficient funds to complete the project without a loan from SM , and SM is willing to lend $117,429 to Atlas for purposes of completing the

SM/Cade                              1.

EXHIBIT
3          4

project and in accordance with and reliance upon the terms and provisions of this First Amendment to Development Agreement and the First Amendment to Small Project Agreement;

NOW THEREFORE, in consideration of the mutual promises and obligations described hereunder, the undersigned agree to this First Amendment as follows:

1. Cade represents and warrants to SM that the recitals above are true and correct in all material respects.

2. Cade agrees as a condition precedent to this First Amendment becoming effective that it will enter into the attached "First Amendment" to the Small Project Agreement.

3. Cade agrees to substantially complete the Project under its Small Project Agreement (and First Amendment) with Atlas within 30 to 40 days of the Effective Date hereof, absent the intervention of unforeseeable events beyond the control of both. Cade further agrees to pursue and secure promptly and without delay all additional regulatory approvals without cost to SM, including without limitation any applicable certificates of occupancy (estimated to take no more than 30 days after substantial completion) and any and all condominium recordations and approvals (estimated to take no more than another 60 days after issuance of the certificate of occupancy), so as to make each of the Project units inhabitable and sellable as soon as possible after substantial completion; and Cade hereby estimates in good faith that such combined process should take no longer than a total of 90 to 100 days after such completion.

4. Cade, upon completion, agrees to accept $5,000 ($30,000 contract price less $7,500 previously paid less negotiated reduction totaling $17,500) as full, final and complete payment of any and all obligations under the Development Agreement, and hereby waives and releases any and all other claims against SM, and/or the Property, including without limitation any mechanics lien claims against the Property; and further agrees to defend, indemnify and hold SM harmless from any and all claims of Atlas, its suppliers, subcontractors, employees, or other representative or persons working on the Project, including without limitation any mechanics lien claims. *There is one additional cost in the amount of $8,500 for condo doc preparation, permits + survey fees; Cade will receive this amount out 9/06 of any balance due for Cade Dev Fee* In that connection, Cade represents, warrants and agrees that SM shall not have any additional obligations for the Project, whether to Cade, Atlas or any other third party over and above the specific amounts described in this First Amendment.

5. This First Amendment may be executed in counterparts, including facsimile counterparts, each of which when delivered to all parties shall be deemed an original and all of which, taken together, shall constitute one and the same instrument. This First Amendment, together with the Small Project Agreement and the First Amendment thereto (as to Atlas) and the Development Agreement (as to Cade), constitutes the entire agreement among the parties and supersedes any and all discussions, understandings, agreements, or arrangements among the parties hereto regarding the subject matter

SM/Cade

2

07/23/2007 15:03 FAX                                                          ☒003/003

hereof. No modifications or amendments to the Development Agreement shall be valid
or effective unless reduced to writing and signed by all signatories hereto.

6. Except as modified above, the Development Agreement is hereby ratified and
approved without further amendments or changes.

Effective Date: July 19, 2007

Cade Construction, LLC (Cade)

By: _____
Chyla Evans, Manager

_____
Shawne Merriman, Individually
and on behalf of S.M. Real Estate LLC

Attachments: Small Project Agreement and First Amendment thereto, with attached
Unsecured Line of Credit Promissory Note

S:\CLARK\AGREE\merriman.cade.V4.FINAL.07197.doc; 7/19/2007 4:14 PM

SM/Cade                              3

                                                                          6

First Amendment to Standard Form of "Agreement between Owner and Contractor for a Small Project" AIA Document A105 as modified by "General Conditions" AIA Document A205 dated 1/14/06 (jointly, Small Project Agreement) Between Cade Construction LLC (Cade) and Atlas Construction Group Inc. (Atlas) For Condominium Conversion And Remodel of Harvard St. Duplex Condos, 1221 Harvard St. Northwest, Washington, DC 20009 (Property or Project) Owned by Shawne Merriman and/or his entity S.M. Real Estate, LLC (jointly, SM)

WHEREAS, Cade and Atlas entered into the Small Project Agreement for the fixed contract price of $442,000;

WHEREAS, SM has obligated himself to pay the amounts agreed by him and due and owing to Atlas pursuant to the Small Project Agreement under his Development Agreement with Cade, whereby Cade agreed to manage the development of the Project;

WHEREAS, Cade and Atlas during construction have agreed upon 2 change orders totaling $25,450 ($17,500 for water service upgrade and $7,950 for removal/replacement of second-floor masonry wall), bringing the total contract price up to $467,450;

WHEREAS, Atlas has been paid $422,000 out of the adjusted contract price of $467,450, and is owed another $45,450 upon completion of the Project;

WHEREAS, Atlas represents and agrees that completion of the Project will require another $116,429 in addition to the $45,450 owing under the adjusted contract price, making a total of $161,879 in order to complete the Project (Atlas Completion Costs);

WHEREAS, Atlas desires to borrow and SM is willing to lend $117,429 to Atlas for purposes of completing the Project and in accordance with and reliance upon the terms and provisions of the Small Project Agreement, as modified by this First Amendment, and the Unsecured Line of Credit Promissory Note;

NOW THEREFORE, in consideration of the mutual promises and obligations described hereunder, the undersigned agree to this First Amendment as follows:

1. Atlas represents and warrants to SM that the recitals above are true and correct in all material respects.

2. SM agrees to lend Atlas up to $117,429 according to the Unsecured Line of Credit Promissory Note attached hereto, and Atlas agrees to repay the same in accordance with the terms thereof.

3. Atlas agrees to substantially complete the Project within 30 to 40 days of the Effective Date hereof, absent the intervention of unforeseeable events beyond the control of Atlas.

4. Atlas will cooperate with Cade in securing promptly and without delay all additional regulatory approvals without cost to SM, including without limitation any applicable, WITH THE EXCEPTION OF $8,500 IN ADDITIONAL COSTS FOR CONDO DOC PREPARATION, PERMITS + SURVEY FEES. CADE WILL RECEIVE THIS AMOUNT OUTSIDE OF ANY BALANCE DUE FOR CADE DEVELOPER FEE.  7/23  Cade

CADE/ Atlas/SM                    DZ  1

EXHIBIT

4

7

certificates of occupancy (estimated to take no more than 30 days after substantial completion) and any and all condominium recordations and approvals (estimated to take no more than 60 days after substantial completion), so as to make each of the Project units inhabitable and sellable as soon as possible after substantial completion; and each hereby estimates in good faith that such process should take no longer than a total of 90 to 100 days after such completion.

5. Atlas, upon completion, agrees to accept a total of $467,450 as full, final and complete payment of any and all obligations under the Small Project Agreement, and hereby waives and releases any and all other claims against Cade, SM, or the Property, including without limitation any mechanics lien claims against the Property; and further agrees to defend, indemnify and hold SM harmless from any and all claims of its suppliers, subcontractors, employees, or other representatives or persons working on the Project, including without limitation mechanics lien claims.

6. Atlas agrees as a condition precedent to this First Amendment becoming effective that Cade will have concurrently entered into the attached "First Amendment" to the Development Agreement.

7. This First Amendment may be executed in counterparts, including facsimile counterparts, each of which when delivered to all parties shall be deemed an original and all of which, taken together, shall constitute one and the same instrument. This First Amendment, together with the Small Project Agreement and the Unsecured Line of Credit Promissory Note constitutes the entire agreement among the parties hereto and supersedes any and all discussions, understandings, agreements, or arrangements among the parties regarding the subject matter hereof. No modifications or amendments to this First Amendment, or to the Small Project Agreement or to said Promissory Note shall be valid or effective unless reduced to writing and signed by all signatories hereto.

8. Except as modified above, the Agreement is hereby ratified and approved without further amendments or changes.

Effective Date: July 20, 2007 Date draw is actually recieved. _____

Cade Construction, LLC (Cade)                    Atlas Construction Group, Inc (Atlas)

By: _____                            By _____
Chyla Evans , Manager                            Christopher Brauss, Principal
                                                 By _____
X                                                Jamal A. Williams, Principal  4/21/?
_____
Shawne Merriman, individually
and on behalf of S.M. Real Estate LLC

Attachments: Unsecured Line of Credit Promissory Note; First Amendment to Development Agreement
S:\CLARK\AGREE\merriman.atlas.v4.FINAL.07197.doc; 7/19/2007 4:18 PM

CADE / Atlas / SM                              $2

8

## UNSECURED LINE OF CREDIT
## PROMISSORY NOTE

$117,429 (maximum amount)                                    Date: July ~~20~~ 21, 2007

*FOR VALUE RECEIVED*, receipt of which is hereby acknowledged, the undersigned hereby promises to pay to S.M. Real Estate LLC and Shawne Merriman (jointly, SM) at CSI Capital Management, Inc (att'n Gary Scharf/Amiee Burns) at Three Northwinds Center, Suite 275, 2500 Northwinds Parkway, Alpharetta, GA 30004 (or such other location as the holder hereof designates), or order, the sum of One Hundred Seventeen Thousand Four Hundred And Twenty-Nine ($117,429), or such lesser amount as has been advanced, in lawful currency of the United States of America, together with interest from the date hereof on the declining balance at the rate of 8.5 percent (8.5%) per annum.  Payments are due and payable in three equal principal amounts of $39,143 each, starting on the day which is 6 months after the effective date hereof, to wit, ~~January 20, 2008~~, with another payment of $39,143 on the 9th month hereafter (~~April 20, 2008~~), and the final payment of $39,143 payable one year after the effective date, ie on ~~July 20, 2008~~. Each payment shall include all accrued interest on the entire principal balance to the date of such payment, and each payment shall be credited first to accrued interest and then to outstanding principal.

*[handwritten margin: 210 days from the effective date]*
*[handwritten margin: 180 days from the effective]*

The procedures and accounting for advancing sums to Atlas under this Line of Credit shall be specified and approved by Cade Construction, LLC (Cade) and shall be consistent with the procedures used to date in connection with the construction project at 1221 Harvard St., NW, Wash. DC, and the related $450,000 construction loan from Fidelity and Trust Bank. Atlas agrees that the accounts of SM as prepared and monitored by Cade shall be prima facie evidence of the amounts due from and payments made by Atlas hereunder; all advances by SM to Atlas and all payments by Atlas to SM shall be recorded by Cade on the attached schedule, and shall be copied to Atlas.

*[handwritten margin: 60 days from the effective date.]*

The undersigned may prepay at any time or from time to time any portion or all of the amount due hereunder, without penalty.

In the event of default in making any of the three partial principal payments (plus all accrued interest), which default is not cured within ten (10) days, the holder hereof shall have the option of accelerating the entire principal balance by giving the undersigned written notice thereof; in addition, the undersigned agrees (1) to pay a late penalty of five percent (5%) for any portion of the payment which is not received by the holder hereof on such due date, and (2) if the full principal balance and all accrued interest is not paid on or before ~~July 18, 2008~~, to thereafter pay interest on the unpaid principal amount at the highest interest rate permitted by law.

*[handwritten margin: 360 da from the effective da]*

This Note is to be governed and construed in accordance with the laws of the state of Maryland. Notwithstanding anything to the contrary in this Unsecured Line of Credit Promissory Note, the total liability for interest payments shall not exceed the limits, if any, imposed by the usery laws of the State of Maryland, and any such excess shall be refunded in cash to debtor by holder.

If an action is brought to collect this Note, the holder hereof shall be entitled to receive all costs of collection including, without limitation, reasonable attorneys' fees.  The undersigned hereby waives offset, presentment, demand, protest and notice of nonpayment or dishonor of this Note.

This Note constitutes the full and complete agreement of the parties regarding the undersigned's obligations described herein.  This Note shall not be modified in any respect, nor shall any forgiveness occur, without the express written consent of the holder.

**Atlas Construction Group, Inc** (a District of Columbia corporation)
By: _____
Name: Christopher S. Brauss
Title: Principal
By: _____   7/21/07
Name: Jamal A. Williams
Title: Principal

CADE/ATLAS/SM          ¢ 3



EXHIBIT
5

9

SCHEDULE OF ADVANCES MADE AND PAYMENTS RECEIVED

| Date | Amount of Advance Made | Amount of Payment Received | Unpaid Principal Balance | Notation Made By |
|------|------------------------|----------------------------|--------------------------|------------------|
|      |                        |                            |                          |                  |
|      |                        |                            |                          |                  |
|      |                        |                            |                          |                  |
|      |                        |                            |                          |                  |
|      |                        |                            |                          |                  |
|      |                        |                            |                          |                  |
|      |                        |                            |                          |                  |
|      |                        |                            |                          |                  |
|      |                        |                            |                          |                  |
|      |                        |                            |                          |                  |
|      |                        |                            |                          |                  |
|      |                        |                            |                          |                  |
|      |                        |                            |                          |                  |
|      |                        |                            |                          |                  |
|      |                        |                            |                          |                  |
|      |                        |                            |                          |                  |

S:\CLARK\AGREE\merriman.atlas.prom.note.V4.FINAL.07197.doc; 7/19/2007 4:23 PM

CADE/ATLAS/SM          5 4

10

Jul 30 07 09:23p



July 30, 2007

S.M. Real Estate, LLC
c/o
CADE Construction, LLC
7443 Crestberry Lane
Bethesda, MD 20817
Attn: Ms. Chyla Evans

Re:    1221 Harvard Street, NW – Carrying Costs

Dear Ms. Evans:

Reference is made to the Standard Form of "Agreement between Owner and Contractor for a Small Project" AIA Document A105 as modified by "General Conditions" AIA Document A205, dated January 14, 2006, Between Cade Construction LLC ("**Cade**") and Atlas Construction Group Inc. ("**Atlas**") For Condominium Conversion And Remodel of Harvard St. Duplex Condos, 1221 Harvard St. Northwest, Washington, DC 20009 (the "**Project**") Owned by Shawne Merriman and/or his entity S.M. Real Estate, LLC (jointly, "**SM**").

This Letter Agreement confirms our understanding with respect to certain matters set forth in all Project Agreement (as amended) and the transactions contemplated therein. Atlas agrees that:

It shall be the interest-only payments on the construction loan for the Project held by Fidelity & Trust Bank for the period beginning on August 1, 2007 and ending on the date on which the final inspections for the Project have been issued.

In addition to this letter agreement, the obligation to pay this interest shall be documented by a promissory note, bearing no interest, that will be executed by Atlas once the exact amount of the interest-only payments are known, which note shall be entered into immediately thereafter by Atlas.

This Letter Agreement shall be governed by and construed in accordance with the laws of the State of New York, without reference to principles of conflicts or choice of laws, or any other law that would make the laws of any jurisdiction other than the State of New York applicable hereto.

This Letter Agreement may be executed in any number of counterparts, each of which shall be an original and all of which, when taken together, shall constitute one original.

7/30/07 - Supp-

11

Jul 30 07 09:29p



If the foregoing correctly sets forth our agreement, please indicate your acceptance of the terms hereof by signing in the appropriate space below and returning to us the executed duplicate of this Letter Agreement

Very truly yours,

ATLAS CONSTRUCTION GROUP, INC.

By:_____

Name: Christopher S. Biggis

Title: Principal

Agreed to and accepted as of the date first above written:

CADE CONSTRUCTION, LLC

By:_____

Name: Chyla Evans

Title: Managing Member

Date: _____, 2007

Shawne Merriman, individually
& on behalf of SM Real Estate, LLC

7/30/07 - Sepp                                                    12

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

| **I (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Shawne Merriman<br>S. M. Real Estate, LLC | CADE Construction, LLC<br>ATLAS Construction Group, Inc. |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   San Diego, CA<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY) --------------------<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>Arthur G. House, Esq.<br>Roy I. Niedermayer, Esq.<br>PALEY, ROTHMAN, GOLDSTEIN, ROSENBERG, EIG & COOPER, CHTD.<br>4800 Hampden Lane, Seventh Floor<br>Bethesda, MD 20814<br>Telephone: (301) 951-9334 | ATTORNEYS (IF KNOWN) |
|---|---|

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
   Plaintiff

○ 2 U.S. Government
   Defendant

● 3 Federal Question
   (U.S. Government Not a Party)

◉ 4 Diversity
   (Indicate Citizenship of
   Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ● 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ● 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/
   Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency
   Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
      Administrative Agency is Involved)

○ **D. Temporary Restraining
   Order/Preliminary
   Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

---

○ **E. General Civil (Other)**         OR         ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
      defendant
☐ 871 IRS-Third Party 26
      USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
      of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
      Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
      Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
      Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
      Exchange
☐ 875 Customer Challenge 12 USC
      3410
☐ 900 Appeal of fee determination
      under equal access to Justice
☐ 950 Constitutionality of State
      Statutes
☐ 890 Other Statutory Actions (if
      not administrative agency
      review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General** ☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment** (criteria: race, gender/sex, national origin, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ **895 Freedom of Information Act** ☐ **890 Other Statutory Actions** (if Privacy Act) *(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans (excluding veterans)** |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ⊙ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act** ☐ **720 Labor/Mgmt. Relations** ☐ **730 Labor/Mgmt. Reporting & Disclosure Act** ☐ **740 Labor Railway Act** ☐ **790 Other Labor Litigation** ☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)** ☐ **443 Housing/Accommodations** ☐ **444 Welfare** ☐ **440 Other Civil Rights** ☐ **445 American w/Disabilities-Employment** ☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance** ☐ **120 Marine** ☐ **130 Miller Act** ☐ **140 Negotiable Instrument** ☐ **150 Recovery of Overpayment & Enforcement of Judgment** ☐ **153 Recovery of Overpayment of Veteran's Benefits** ☐ **160 Stockholder's Suits** ☒ **190 Other Contracts** ☐ **195 Contract Product Liability** ☐ **196 Franchise** | ☐ **441 Civil Rights-Voting (if Voting Rights Act)** |

**V. ORIGIN**

⊙ **1 Original Proceeding** ○ **2 Removed from State Court** ○ **3 Remanded from Appellate Court** ○ **4 Reinstated or Reopened** ○ **5 Transferred from another district (specify)** ○ **6 Multi district Litigation** ○ **7 Appeal to District Judge from Mag. Judge**

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. 1332. Breach of construction contract for condominium conversion and construction management.

**VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐ | **DEMAND $** 175,000 | Check YES only if demanded in complaint **JURY DEMAND:** YES ☐ NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE __July 16, 2008__   SIGNATURE OF ATTORNEY OF RECORD _Roy Niedermay_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.